1
2
3
4
5
6
7

United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SUSAN SMITH,

          Plaintiff,

    v.

WALGREENS BOOTS ALLIANCE, INC., et al.,

          Defendants.

Case No.  20-cv-05451-CRB

**ORDER GRANTING MOTIONS TO DISMISS AND GRANTING CONDITIONAL LEAVE TO AMEND**

     Before the Court is a putative class action brought on behalf of chronic pain patients[1] against two sets of pharmacies in connection with the pharmacies' distribution of opioid drugs.  This case is a companion to City and County of San Francisco, et al. v. Purdue Pharma L.P., et al., No. 3:18-cv-07591-CRB (hereinafter, "Purdue").  In Purdue, this Court held that the Controlled Substances Act ("CSA") imposes a duty upon distributors of opioids to "identify, report, and refrain" from filling suspicious opioid orders.  See Purdue, No. 3:18-cv-07591-CRB (dkt. 285 at 5-7).  The Court found that entities in the opioids stream-of-commerce are obligated to "provide effective controls and procedures to guard against theft and diversion of controlled substances."  Id. at 6.  The Purdue litigation seeks to hold opioids manufacturers and distributors accountable for not

---

[1]  Plaintiff also seeks to represent persons in palliative or nursing home care and individuals suffering from sickle cell anemia or cancer treatment.  FAC ¶ 16-17.

doing enough to stem the illicit opioids economy.  Here, Plaintiff argues that Walgreens Boots Alliance, Inc. ("WBA"), WAGDCO, LLC ("WAGDCO" and together with WBA, "Walgreens"), Costco Wholesale Corporation ("Costco"), and Does 1-10 ("Does") (collectively, "Defendants") have gone too far in their efforts to prevent the unlawful sale of opioids.  Plaintiff alleges that Defendants have indeed violated federal discrimination statutes and California law by interfering with the class's access to opioids.  Defendants have moved to dismiss, and, as explained below, the Court will do so.

## I.    BACKGROUND

### A.    Factual History

It is by now well-known that the United States has been suffering from an opioid crisis for decades.  See FAC (dkt. 13) ¶ 42-44.  Toward the mid-2000s, public health officials became alarmed by increasing opioid fatalities, setting off a chain reaction in public health policy, government enforcement actions, and civil litigation.  Id. Simultaneously, the United States has been dealing with another crisis: the chronic pain epidemic.  According to the Centers for Disease Control ("CDC"), in 2016 alone, an estimated 50 million Americans suffered from chronic pain.  Id. ¶ 37 (citing Dahlhamer, J., J., Lucas, C., Zelaya, et al. 2019. Prevalence of Chronic Pain and High-Impact Chronic Pain Among Adults – United States, 2016. MMWR, 67 no. 36:1001-1006).  In addition to high levels of daily pain, people with chronic pain often suffer from depression and anxiety and commit suicide at a higher rate than the general population.  FAC ¶ 38.

In the 2010's, the CDC and the American Medical Association ("AMA") each began to publish guidelines around properly prescribing opioids.  Id. ¶ 46.  CDC Guideline

Recommendations 5 and 6 (issued in 2016) are particularly relevant here:

> 5.   When opioids are started, clinicians should prescribe the lowest effective dosage.  Clinicians should use caution when prescribing opioids at any dosage, should carefully reassess evidence of individual benefits and risks when considering increasing dosage to > 50 morphine milligram equivalents (MME)/day, and should avoid increasing dosage to > 90 MME/day or carefully justify a decision to titrate dosage to > 90 MME/day.
>
> 6.   Long-term opioid use often begins with treatment of acute pain.  When opioids are used for acute pain, clinicians should prescribe the lowest effective dose of immediate-release opioids and should prescribe no greater quantity than needed for the expected duration of pain severe enough to require opioids. Three days or less will often be sufficient; more than seven days will rarely be needed.

FAC ¶ 46, 48; CDC Guideline for Prescribing Opioids for Chronic Pain United States, March 18, 2016.

Later, both the CDC and the AMA would disavow these 2016 Opioid Prescribing Guidelines, acknowledging they have led to poor outcomes for certain patients in need of opioid medication.  Id. ¶ 51-54.  Named Plaintiff Susan Smith is one of these patients.  Id. ¶ 68.  Mrs. Smith was diagnosed with Epilepsy at the age of 17, crashed her car while driving in June 2010, and among other things, developed chronic back pain as a result of the accident and subsequent surgeries.  Id. ¶ 69.  In 2011, the Social Security Administration found Mrs. Smith to be disabled.  Id.  Today, Mrs. Smith suffers not only from Chronic Pain Syndrome (which causes pain in her joints), but also regular migraines, seizures, chest pain, and heart palpitations.  Id. ¶ 69-71.[2]  Because Mrs. Smith has many medical allergies, the only medication she can use to relieve her pain are opioids.  Id. ¶ 73, 76.  Mrs. Smith has been prescribed Morphine for her chronic pain since 2011 and has taken the same dose, prescribed by the same physician, since 2012.  Id. ¶ 76.

---

[2] The FAC contains a full list of Mrs. Smith's diagnoses at ¶ 74.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

Mrs. Smith alleges that since 2012 she has faced "discrimination, ridicule and outright harassment" by pharmacists at Walgreens and Costco when attempting to pick up her opioid prescriptions.  Id. ¶ 77.  On one occasion, Mrs. Smith recalls that a Walgreens pharmacist required her doctor to fill out detailed medical forms before issuing her opioids but, when those forms were delivered, the pharmacist would not fill Mrs. Smith's prescription because the letter "i" in the word Morphine was not "dotted."  Id. ¶ 79-80.  When Mrs. Smith complained to Walgreens corporate, she reports being treated as "a nuisance or a drug addict."  Id. ¶ 81.  Likewise, in 2017, Mrs. Smith says that a Walgreens pharmacist "flatly refused" her prescription request for no apparent reason, except that the pharmacist told her, "maybe you should try rehab instead of pain meds."  Id. ¶ 83.  Mrs. Smith alleges several other incidents where she was denied opioids from Walgreens without cause.  See id. ¶ 84-85.[3]  Mrs. Smith also reports that Costco mysteriously rejected her prescriptions for opioid medication without explanation.  Id. ¶ 93.  Both times, Mrs. Smith claims that she was "flatly told 'no'" by a Costco pharmacist when attempting to fill her opioid prescription.  Id. ¶ 93.  One pharmacy manager told her that Costco did not sell her medication and walked away.  Id.

Mrs. Smith does not believe that she is alone.  She seeks to represent a class of similarly situated individuals also allegedly harmed by pharmacists at Walgreens and Costco.  The putative class consists of persons:

> [W]ho were issued prescriptions for opioid medication by a licensed medical provider as part of medical treatment for (i) chronic pain, defined as pain lasting 3 or more months, from any

---

[3]  Further, she alleges that while she is a member of Walgreens' Prescription Savings Club (the "Walgreens Program"), which represents savings of up to 80% on prescriptions purchased through Walgreens, the 80% discount has been inconsistently applied to her opioid purchases.  FAC ¶ 87.

cause, (ii) pain associated with a cancer diagnosis or treatment, (iii) palliative or nursing home care or (iv) sickle cell anemia and were either (a) unable to get any such prescription(s) filled, (b) unable to get any such prescription(s) filled as written, (c) required to submit non-opioid prescriptions or purchase other products in conjunction with their opioid prescription(s) or (d) told that their prescriptions for opioid medication would no longer be filled or no longer be filled as written at any pharmacy owned, controlled and/or operated by the Defendants in The United States.

FAC ¶ 16.

While the effect of Defendants' behavior is allegedly the same (i.e., harm in the form of compensatory damages and pain-and-suffering), the companies' policies are allegedly different. Plaintiff alleges that under Costco's policy, Costco "flatly refuse[s] to fill prescriptions for opioid medication or possibly for certain opioid medication, either as a matter of express or implicit policy." Id. ¶ 66.[4]

Walgreens, allegedly, has a more detailed policy. First, Plaintiff claims that Walgreens "blacklists" certain individuals and/or their prescribing physicians from seeking to fill opioid prescriptions, including Plaintiff. Id. ¶ 55. Second, Plaintiff alleges that, in or about 2013, Walgreens implemented hard limits on both the "dosage and duration" of opioid prescriptions (i.e., Walgreens refuses to sell opioids above a certain dose and duration). Id. ¶ 56. Third, Plaintiff claims that Walgreens does not sell opioids "unless accompanied with one or more prescriptions for non-opioid medication." Id. ¶ 57. Fourth, Plaintiff alleges that the Walgreens Policy requires that patients "provide comprehensive medical records" before purchasing opioids. Id. ¶ 58.

---

[4] Under Costco's Member Prescription Program (the "Costco Program"), which supposedly guarantees discounts on pharmaceutical products purchased through Costco, Mrs. Smith's savings are not available because Costco refuses to fill her opioid prescriptions. Id. ¶ 67.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### B.      Procedural History

Plaintiff filed a putative class action on August 6, 2020, alleging that the prescription fulfillment practices of Walgreens and Costco discriminate on the basis of disability.  See generally Compl. (dkt. 1).[5]  On September 14, 2020, Plaintiff filed her first amended complaint ("FAC"), bringing suit under the Americans with Disabilities Act (42 U.S.C. §12101 et seq.), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794), the Anti-Discrimination Provisions of the Affordable Care Act (42 U.S.C. §18116), the Unruh Civil Rights Act (Cal. Civ. Code §51, et seq.), and California's Unfair Competition Law (Cal. Bus. & Pro. Code §17200, et seq.).  See FAC (dkt. 13) ¶ 97-148.

In response, on November 20, 2020, Defendants filed three motions to dismiss: (1) a motion to dismiss for lack of personal jurisdiction filed by WBA; (2) a motion to dismiss for failure to state a claim filed by Walgreens; and (3) a motion to dismiss for failure to state a claim and for lack of Article III standing filed by Costco.  WBA MTD (dkt. 35); Walgreens MTD (dkt. 36); Costco MTD (dkt. 41).  Plaintiff filed individual responses to each (Pl. Response to Walgreens MTD (dkt. 53); Pl. Response to Costco MTD (dkt. 54); Pl. Response to WBA MTD (dkt. 55)) and Defendants filed their replies roughly two weeks later (WBA Reply (dkt. 56); Walgreens Reply (dkt. 57); Costco Reply (dkt. 58)).  The Court held a hearing on the motions to dismiss on January 28, 2021.  Mot. Hearing Minutes (dkt. 59).

After careful consideration of the parties' filings and oral arguments, and the

---

[5]  Plaintiff also alludes to "age" discrimination at various places in her Complaint.  See FAC ¶ 60(c); 66(c).  However, Plaintiff does not provide any support for this claim, nor does she attempt to advance this allegation anywhere else in her pleadings.  Thus, the Court does not address any age discrimination claim herein.

applicable law, the Court GRANTS Costco's Motion to Dismiss with prejudice and GRANTS each of Walgreens' Motions to Dismiss without prejudice.  The Court also GRANTS Plaintiff leave to amend and to cure the deficiencies contained in the FAC.  The Court's reasoning is explained below.

## II.    LEGAL STANDARD

### A.    Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure a complaint must contain a "short and plain statement of the claim" showing that the plaintiff is entitled to relief.  See Fed. R. Civ. P. 8(a)(2); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "[L]abels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient, as are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Twombly, 550 U.S. at 555.  Moreover, unless the court converts a Rule 12(b)(6) motion into a motion for summary judgment, the court may not consider material outside the complaint.  Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).

Courts should allow a plaintiff leave to amend, unless amendment is futile.  Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246–47 (9th Cir. 1990).  In determining whether amendment is futile, courts examine whether the complaint can be amended to cure the defect requiring dismissal "without contradicting any of the

allegations of [the] original complaint."  Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

## III.   DISCUSSION

To bolster her claim, Plaintiff argues that Walgreens' alleged policy only applies to disabled persons.  Pl. Response to Walgreens MTD (dkt. 53) at 5; Pl. Response to Costco MTD (dkt. 54) at 6.  But, based on the FAC, it is not clear that either of the groups who fill opioid prescriptions at Defendants' pharmacies—chronic pain prescribers and acute pain prescribers—are "disabled" under federal law.  See infra III(A).  At best, then, Plaintiff has alleged the at-issue policies apply to both non-disabled (acute pain prescribers) and disabled groups (chronic pain prescribers) alike (i.e., they are "facially neutral" policies). Crowder v. Kitagawa, 81 F.3d 1480, 1483-84 (9th Cir. 1996).  Plaintiff is left leaning on two theories of discrimination: (1) a disparate impact theory that proceeds under the "meaningful access" standard espoused in Alexander v. Choate, 469 U.S. 287, 308-09 (1985); and (2) a "reasonable accommodation" theory brought under the ADA.  See PGA Tour v. Martin, 532 U.S. 661, 683 n.38 (2001).  Plaintiff has not stated a claim for relief under either theory.  See infra III(B).

### A.   Plaintiff has not plausibly alleged that the purported class is "disabled"

It is axiomatic that no disability discrimination occurs if complainants are not disabled.  Yet, Plaintiff has laid out her case, accusing Costco and Walgreens of systematically denying certain individuals access to opioids, without plausibly alleging that all members of the proposed class are "disabled" under federal law. [6]  See Pl. Response to Walgreens MTD (dkt. 53) at 8 (arguing "[c]hronic pain—whatever its

---

[6]  Because Plaintiff defines the National Class and California Subclass as including "[a]ll persons . . . issued prescriptions for opioid medication . . . as part of medical treatment for . . . chronic pain, defined as pain lasting 3 or more months, from any cause," FAC ¶ 16, the class can only be "disabled" if persons with chronic pain and a prescription are universally "disabled."

source—that requires prescription opioid medication for treatment, by definition" equates to a disability).[7]

### 1. "Chronic pain" patients

Plaintiff's bare assertion that she and the putative class are disabled "by definition" does not control. Indeed, the parties agree that, under each of the statutes relevant to Plaintiff's discrimination claims, a person is disabled if he suffers from an "impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A) (emphasis added); see also 29 U.S.C. §§ 705(20)(B), 794; 42 U.S.C. § 18116(a); FAC ¶ 114; Pl. Response to Walgreens MTD (dkt. 53) at 6; Walgreens MTD (dkt. 36) at 3, n.4. The ADA defines a major life activity non-exclusively as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I). To be substantially limited, a person must be completely unable to perform a major life activity or be "significantly restricted as to condition, manner or duration" of a major life activity as compared to the average person. 29 C.F.R. § 130.2(j); see also Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002); EEOC v. United Parcel Serv., Inc., 306 F.3d 794, 802 (9th Cir. 2002).

To be clear, there is no doubt that Mrs. Smith has adequately alleged that she is "disabled" under federal law. See FAC ¶ 75 (listing tasks that Mrs. Smith cannot perform, including household chores, getting dressed, bathing, and sitting or standing for long periods). However, the question here is whether all members of the putative class are

---

[7] Plaintiff has not yet submitted the class for certification. However, the Court may consider whether the putative class could be considered "disabled," to state a claim for disability discrimination, at the motion to dismiss stage.

unable to perform (or are significantly restricted from performing) a major life activity

such that they are properly considered "disabled" under federal law.  See, e.g., Toyota

Motor, 534 U.S. at 195.

The law is clear: chronic pain, alone, is not enough to create a disability.  Hale v.

King, 642 F.3d. 492, 501 (5th Cir. 2011) (plaintiff with "chronic back pain" not disabled

under ADA where "the complaint argued that [plaintiff's] conditions require that he

receive certain prescriptions and treatments that the various defendants named in the

complaint were not providing" but "did not contain facts regarding the impact of

[plaintiff's] ailments on his ability to perform major life activities."); Gaines v. Diaz, 2014

WL 4960794, at *6 (E.D. Cal. Oct. 1, 2014) (allegations of "unspecified lower body and

pain condition(s)" insufficient to plead disability claim); Bain v. Transcor Am., LLC, 2009

WL 562586, at *5 (M.D. Tenn. Mar. 5, 2009) ("Merely having back problems or chronic

pain symptoms or being provided with medication for these problems does not per se

render [plaintiff] a qualified individual with a disability under the ADA.").  Plaintiff does

not explain why receipt of opioid treatment would change the result.  Indeed, at least with

respect to chronic pain, Plaintiff's own Complaint (and the CDC report cited therein)

rebuts the contention that all chronic pain patients receiving opioids for treatment are

disabled.  FAC ¶ 40 ("[C]hronic pain has such diverse causes and wide-ranging effects.");

id. ("Patients with the same [chronic pain] diagnosis can have different pain levels."); J.

Dahlhamer, et al., "Prevalence of Chronic Pain and High-Impact Chronic Pain Among

Adults—United States, 2016," Morbidity and Mortality Weekly Report 67:36, at 1002

(Sept 14, 2018) ("National estimates of high-impact chronic pain can help differentiate

persons with limitations in major life domains . . . from those who maintain normal life

activities despite chronic pain.") (emphasis added).[8]

### 2.    "Acute pain" patients

Likewise, Plaintiff's alternative assertion, that <u>all individuals who seek to fill an</u> <u>opioid prescription</u> at Defendants' pharmacies are "disabled" under federal law, is incorrect as a matter of law.  Pl. Response to Walgreens MTD (dkt. 53) at 5.  Plaintiff has two different theories for why acute pain prescribers (and thus, all individuals who seek to fill an opioid prescription) are disabled.  <u>See</u> Pl. Response to Walgreens MTD (dkt. 53) at 9-10; Pl. Response to Costco MTD (dkt. 54) at 6-10.  First, Plaintiff makes the conclusory statement that acute pain patients are "disabled for a relatively short period" by virtue of the intensity of their pain.  Pl. Response to Walgreens MTD at 9.  Second, Plaintiff attempts to shoehorn acute pain patients into the "regarded as" prong of the ADA.  <u>See</u> 42 U.S.C. § 12102(1)(B); Pl. Response to Walgreens MTD at 9.  Under this theory, even if an individual is not actually disabled, he can still qualify as "disabled" if he is "regarded as having" a physical or mental impairment.  42 U.S.C. § 12102(1).  Plaintiff summarily states—just a single time—in the FAC that people seeking to fill opioid prescriptions at Walgreens are "arbitrarily treated as criminals and/or drug addicts," without providing further support.  FAC ¶ 34.  Thus, according to Plaintiff, the bare allegation that Walgreens treats its opioid prescribers as "drug addicts" means that Walgreens "regards" those individuals as being disabled.  Both theories fail.

First, while it is true that short-term disabilities warrant federal protection, Plaintiff

---

[8]  For this reason, too, the Court foresees that Plaintiff would have difficulty establishing typicality at the class certification stage given the wide array of patient experiences.

has not plausibly alleged that all patients with acute pain are substantially limited from a major life activity. See, e.g., Sanders v. Arneson Prods., 91 F.3d 1351 (9th Cir. 1996) ("[A] temporary injury with minimal residual effects cannot be the basis for a sustainable claim under the ADA."); Stanley-Bey v. San Quentin State Prison, No. 17-04511 BLF (PR), 2018 WL 6334984, *6 (N.D. Cal. Dec. 3, 2018) ("Temporary, nonchronic impairments with no long-term impact are not generally considered substantially limiting."). Indeed, as Costco points out (see Costco Reply (dkt. 58) at 7), if courts followed Plaintiff's interpretation of the law, "[a] person facing a wisdom tooth removal or other minor procedure" could qualify as "disabled."

Second, Plaintiff's "regarded as" theory is unsupported in the pleadings, and, if accepted, would result in an overly broad class that federal disability law was never meant to protect. See FAC ¶ 37 (estimating that 50 million Americans suffered from chronic pain in 2016 alone). Plaintiff reasons that, because "persons seeking to fill opioid prescriptions . . . have been denied access to necessary medication," they are "arbitrarily treated as criminals and/or drug addicts." Pl. Response to Walgreens MTD (dkt. 53) at 9-10. But placing uniform restrictions on the purchase of an extremely addictive and deadly substance (or, in Costco's case, allegedly imposing a "flat" ban on sales) does not support the conclusion that Defendants secretly regard all opioid prescribers as drug addicts. Additionally, Plaintiff's position makes no logical sense. If Defendants truly believed, as the "regarded as" theory requires, that all patients purchasing opioids at their pharmacies were drug addicts, why would they sell drugs to those patients at all, particularly given the duties imposed on distributors under the CSA, as discussed in Purdue? Lastly, at least with respect to Walgreens, Plaintiff does not allege that all opioid patients are outright

United States District Court
Northern District of California

banned from buying opioids, just that <u>some</u> opioid prescribers are having a harder time filling their prescriptions at Walgreens' pharmacies.  FAC ¶ 55-62.  But if Walgreens regards <u>all</u> prescribers as addicts, then why would it allow <u>some</u> opioid prescribers to purchase opioids and restrict sales to others, as Plaintiff alleges?  Not all acute pain patients are "disabled" under federal law.  Therefore, the class consists of disabled and nondisabled people at best, and Defendants' policies apply to both non-disabled persons and the putative class alike.

### B.    Costco's and Walgreen's motions to dismiss

#### 1.    Costco

Plaintiff reports two experiences at Costco's pharmacies, which both involved Costco pharmacists mysteriously denying her opioid prescription.  FAC ¶ 93.  Plaintiff alleges that, both times she visited Costco's pharmacy, she was "flatly told 'no'" (i.e., without explanation) by a pharmacist when she requested her prescription be filled.  <u>Id.</u> One pharmacy manager told her that Costco did not sell her medication and walked away. <u>Id.</u>  Plaintiff interprets these experiences as evidence that (a) Costco has a specific policy addressing the sale of opioids; and (b) that the policy operates as a total ban on opioid sales, which discriminates against Plaintiff and members of the putative class.  <u>Id.</u> ¶ 66.  In contrast, Costco denies having <u>any</u> policy restricting the sale of opioids, although Costco's counsel acknowledged at the motion hearing that it <u>does</u> sell opioids.  <u>See</u> dkt. 41 at 7 (calling Plaintiff's allegations "hypothetical"); Mot. Hearing Minutes (dkt. 59). Regardless, as Costco points out, Plaintiff has "fail[ed] to identify any policy or practice by Costco [] that suggests Plaintiff was discriminated against on the basis of her disability." <u>Id.</u>  Accepting Plaintiff's allegations as true, at most she alleges that Costco does not sell

opioids to anyone.  This is not a cognizable claim for discrimination.  See Duvall v. County of Kitsap, 26 F.3d 1124, 1139 (9th Cir. 2001), citing City of Canton v. Harris, 489 U.S. 378, 395 (O'Connor, J., concurring); see Alexander v. Choate, 469 U.S. 287, 308-09 (1985); Davis v. Astrue, 513 F. Supp. 2d 1137, 1149 (N.D. Cal. 2017).  Further, granting leave to amend is not appropriate because for Plaintiff to allege a discriminatory opioids policy at Costco, she would necessarily contradict her original allegation that Costco does not sell opioids to anyone.  See Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).  Thus, Costco's Motion to Dismiss is GRANTED with prejudice and the claims against Costco for violations under the ADA, Rehabilitation Act, and ACA are dismissed.[9]

## 2.   Walgreens

Walgreens, allegedly, has a more nuanced policy than Costco.  First, Plaintiff claims that Walgreens "blacklists" certain individuals and/or their prescribing physicians from seeking to fill opioid prescriptions, including Plaintiff.  FAC ¶ 55.  Second, Plaintiff alleges that, in or about 2013, Walgreens implemented hard limits on both the "dosage and duration" of opioid prescriptions (i.e., Walgreens refuses to sell opioids above a certain dose and duration).  Id. ¶ 56.  Third, Plaintiff claims that Walgreens does not sell opioids "unless accompanied with one or more prescriptions for non-opioid medication."  Id. ¶ 57.  Fourth, Plaintiff alleges that the Walgreens Policy requires that patients "provide

---

[9]  The claims brought against Costco under the UCL and Unruh Act are also dismissed because they turn on a finding of liability for Costco on the federal claims.  Lentini v. California Ctr. for the Arts, Escondido, 370 F.3d 837, 846-47 (9th Cir. 2004); Farmers Ins. Exch. v. Superior Court, 2 Cal.4th 377, 383 (1992).  The UCL claim is particularly baseless here.  Plaintiff presents nothing more than naked assertions of unfair and fraudulent activity on behalf of Costco.  See FAC ¶ 141. Additionally, Plaintiff has not pled fraud with sufficient "particularity" under Rule 9(b) to survive a motion to dismiss on her UCL claim against any Defendant.  See Kearns v. Ford Motor Co., 567 F.3d 1120, 1124-25 (9th Cir. 2009).

United States District Court
Northern District of California

comprehensive medical records" before purchasing opioids.  FAC ¶ 58.  Walgreens, for its part, asserts that "the policies in question apply in the same way to every patient with a prescription for an opioid medication."  Walgreens MTD (dkt. 36) at 2; see also Walgreens Reply (dkt. 57) at 5.

From the outset, the Court notes that Plaintiff has alleged no facts supporting a theory of intentional discrimination.  See Young v. Facebook, Inc., 790 F. Supp. 2d 1110, 1116 (N.D. Cal. 2011) (no intentional discrimination where factual allegations did not show plaintiff was treated differently "because of her disability" or that defendant "targeted individuals with disabilities.") (emphasis added).  The Complaint is currently composed of threadbare recitals of intentional discrimination, but not one factual allegation demonstrating Walgreens' alleged discriminatory motive.  See FAC ¶ 90 ("Walgreens acted intentionally and with deliberate indifference . . . .); Id.  ¶ 95 ("Costco acted intentionally and with deliberate indifference . . . .).  Indeed, the crux of Plaintiff's allegations is that Defendants have "misappl[ied]" CDC Guidelines in good faith.  See, e.g., FAC ¶ 52, 55, 60, 66 (calling the alleged policies "laudable in concept" and "misguided attempts to reduce illicit access to painkillers.").  Thus, Plaintiff has not made a prima facie showing of intentional discrimination, and her discrimination claims can only proceed on one of two theories: (1) Plaintiff and the putative class are disparately impacted by the policy and lack "meaningful access" to the services at issue; or (2) Defendants have failed to provide a necessary and reasonable accommodation to Plaintiff.  Both theories fail for the reasons set forth below.

### a.    Lack of "meaningful access"

United States District Court
Northern District of California

To make out a prima facie case of disability discrimination under the ADA or

Rehabilitation Act, a plaintiff must show:

> "(1) she is disabled within the meaning of the ADA; (2) the
> defendant is a private entity that owns, leases, or operates a place
> of public accommodation; and (3) the plaintiff was denied public
> accommodations by the defendant because of her disability."
>
> Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007).[10]

Actionable discrimination under federal discrimination statutes can take the form of

either "outright intentional exclusion" or "discriminatory effects" of a failure to make

reasonable modifications under 42 U.S.C. § 12182(b)(2)(A)(ii).  See Lentini, 370 F.3d

837, 846 (9th Cir. 2004); Crowder v. Kitagawa, 81 F.3d 1480, 1486 (9th Cir. 1996).  Thus,

facially neutral policies may constitute discrimination when they "disproportionately"

deny disabled persons access to places of public accommodation "due to" those persons'

disabilities.  Crowder, 81 F.3d at 1483 (recognizing the ADA's "disparate impact" theory

of liability); see also McGary v. City of Portland, 386 F.3d 1259, 1266-67 (9th Cir. 2004).

"Rather than attempt to classify a type of discrimination as either 'deliberate' or

'disparate impact,'" courts measure compliance with the ADA and Rehabilitation Act by

asking whether disabled persons were denied "meaningful access" to public

accommodations or federally financed services.  Crowder, 81 F.3d at 1484; Doe v. CVS

Pharmacy, Inc., 982 F.3d 1204, 1210 (9th Cir. 2020).  The question is whether disabled

persons are denied "meaningful access" to the services in question, such that the disabled

---

[10]  The primary difference between the ADA and the Rehabilitation Act is that, instead of applying
to places of public accommodation, the Rehabilitation Act applies to entities that receive federal
financial assistance from the United States Department of Health and Human Services.  29 U.S.C.
§794.  Defendants do not dispute that the ADA or Rehabilitation Act applies to them.

individuals are "systematically exclude[d]" from the services at issue.  Doe, 982 F.3d at 1210 (citing Alexander v. Choate, 469 U.S. 287, 302 (1985)).

The only cognizable policy alleged by Plaintiff that could possibly violate the "meaningful access" standard is the alleged "dose and duration" restriction imposed by Walgreens.  FAC ¶ 56.[11]  But while it is possible Plaintiff's prescription rejections were premised on a "dose and duration" policy, that conclusion is implausible given the Walgreens pharmacists' alleged behavior.  See id.  ¶ 79 (denying prescription after reviewing 5 detailed medical forms describing Mrs. Smith's "medical and treatment history"); id. ¶ 81 (denying prescription after Walgreens corporate looked into Mrs. Smith's "prescription history"); id. ¶ 84 (denying prescription because Mrs. Smith's doctor had not written an ICD code with and on the prescription); id. ¶ 84 (denying prescription because Mrs. Smith refused to fill a prescription for Narcan with her opioid prescription). It is implausible that the rejections recounted by Mrs. Smith demonstrate a Walgreens policy that restricts the sale of opioids above a certain dose and duration.  If that was the policy, Walgreens' review of Mrs. Smith's medical and prescription history, the demand for an ICD code, and the request for her to purchase Narcan would have been mere rouses intended to disguise Walgreens' actual policy of denying any opioid prescription above a

---

[11]  Plaintiff's "blacklist" allegation lacks any factual support; it is nothing more than a hunch. FAC ¶ 55.  Additionally, the other allegations—(1) that Walgreens patients are required to produce their medical records when filling opioid prescriptions; (2) that Walgreens patients are required to buy non-opioid prescriptions when filling opioid prescriptions; and (3) that Walgreens and Costco do not provide discounts for opioid products—cannot have an "exclusionary effect" on Plaintiff and the putative class because they impact everyone who seeks to fill an opioid prescription equally, whether disabled or not.  See Choate, 469 U.S. 287 at 302.  These alleged limitations do not rely on "any test, judgment, or trait" that chronic pain patients as a class are "less capable of meeting or less likely of having" and, therefore, do not deny Plaintiff "meaningful access" to Defendants' services.  Id.

certain dose and duration.  But Plaintiff does not allege that Walgreens' rejections, nor its pharmacists' explanations, were dishonest; nor does the Court read any allegation in the FAC as furthering this unpled theory.  See FAC ¶ 79, 81, 84.  Moreover, Plaintiff reports taking the same dose of Morphine since 2012 (prescribed by the same physician) and stated at the motion hearing that she has routinely filled prescriptions from Walgreens in the past 8 years.  FAC ¶ 76; Mot. Hearing Minutes (dkt. 59).  These facts alone make a "dose and duration" policy implausible; if there is a threshold above which Walgreens refuses to fill legitimate opioid prescriptions, it cannot be based on Mrs. Smith's accounts, as she has procured opioids at Walgreens regularly over the last decade.  See id. ¶ 87 (claiming her Walgreens opioids discount has been "inconsistently" applied to her opioid purchases of late).  Simply put, Plaintiff has not alleged that she was deprived her opioid medication based on a policy that uniquely burdens chronic pain patients.

## b.    "Reasonable accommodation" theory

Title III of the ADA also promises "the full and equal enjoyment of the goods [and] services" of privately operated public accommodations, 48 U.S.C. § 12182(a), and requires "reasonable modifications" as "necessary to afford such goods [and] services . . . to individuals with disabilities."  Id. § 12182(b)(2)(A)(ii).  To prevail on a reasonable accommodation claim, a plaintiff must show:

> "(1) [s]he is disabled as that term is defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the defendant employed a discriminatory policy or practice; and (4) the defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability."

1

2

*Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1010 (9th Cir. 2017).

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

To establish a prima facie reasonable accommodation case, a plaintiff must show that the requested modification is both (1) "reasonable" and (2) "necessary" to accommodate the plaintiff's disability.  See PGA Tour v. Martin, 532 U.S. 661, 683 n.38 (2001).  An accommodation is "necessary" when failure to provide the accommodation would deprive a disabled customer from having a "like experience" as non-disabled customers.  Baughman v. Walt Disney World Co., 685 F.3d 1131, 1135 (9th Cir. 2012). And whether an accommodation is "reasonable" is a "fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost of the organization that would implement it." Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1083 (9th Cir. 2004) (internal citation and quotation omitted); see also Baughman, 685 F.3d at 1135 (listing cost, disruptions to business, safety, and technology as factors to consider when assessing whether an accommodation is "reasonable").

19

20

21

22

Here, Plaintiff fails to allege that she ever requested, in any manner, an accommodation from any Defendant. [12]  Moreover, Plaintiff has not plausibly alleged that any of the alleged policies deprive her from having a "like experience" as acute pain

23

24

25

26

27

28

---

[12]  Courts do not always require a formal "request" from plaintiffs.  See, e.g., Aguirre v. California Sch. of Court Reporting (CSCR)-Riverside, No. CV051601042GHKGJS, 2016 WL 7635957, at *3 (C.D. Cal. Dec. 2, 2016) ("Nothing in the text of Title III requires a disabled individual to request an accommodation before bringing suit."); Zivkovic v. S. California Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002) (no "particular language" required to request an accommodation; the plaintiff must merely inform the alleged violator of a "need for an adjustment due to a medical condition.").

United States District Court
Northern District of California

United States District Court
Northern District of California

prescribers (i.e., other opioid seekers).  Nor has Plaintiff taken any steps to show that Defendants' alleged policies are unreasonable in any sense of the word.  In her response to Defendants' motions to dismiss, Plaintiff proposes, for the first time, the following accommodations: Defendants should (a) dispense opioid medication as prescribed when presented with legitimate prescriptions; (b) stop bundling non-opioid prescription medication with opioid medication; (c) no longer require a patient's medical records when selling opioid medication; (d) restrain pharmacists from exercising discretion in their work; and (e) develop opioid policies, and institute comprehensive training, to ensure that Defendants' employees can distinguish between acute pain patients and chronic pain patients.  Dkt. 53 at 17; dkt. 54 at 16.[13]  As discussed above, chronic pain patients have the same experience at Walgreens and Costco as acute pain patients; the only alleged policy that could potentially affect them differently—the "dose and duration" restriction—is not plausibly alleged.  Further, even if chronic pain patients did have a unique experience at Defendants' pharmacies, Plaintiff does not sufficiently allege that the accommodations she requests are "reasonable."[14]  Thus, Plaintiff's reasonable accommodation theory, as

---

[13]  Plaintiff cites a single case to illustrate how her requested accommodation is reasonable.  See Pl. Response to Walgreens MTD (dkt. 53) at 18; Pl. Response to Costco MTD (dkt. 54) at 17 (citing Stiner v. Brookdale Senior Living, Inc., 354 F. Supp. 3d 1046 (N.D. Cal. 2019), aff'd in part, rev'd in part on other grounds, 801 Fed. Appx. 531 (9th Cir. 2020)).  In Brookdale, a group of disabled individuals experienced discrimination when their experience at a senior living center was uniquely affected due to short staffing.  Id. at 1059.  Without necessary staff assistance, the disabled class could not bathe, shower, travel, take medication, dress, dine, or clean their living spaces.  Id.  Non-disabled residents did not require additional staffing to receive those benefits.  Id. Here, unlike in Brookdale, all of the opioids patients at Defendants' pharmacies are affected in the same way: both non-disabled and disabled persons have a harder time receiving their medication because they all are allegedly subject to Defendants' restrictive policies.  Thus, Plaintiff's comparison to Brookdale is unavailing.

[14]  For one, Plaintiff does not address the potential liability that could be incurred by Defendants if they overprescribe or fail to maintain adequate controls on opioids.  Baughman, 685 F.3d at 1135 (listing "cost" as a factor); City and County of San Francisco, et al. v. Purdue Pharma L.P., et al., No. 3:18-cv-07591-CRB.  Likewise, Plaintiff neglects to consider how her suggested accommodations could change the nature of pharmacists' work and disrupt Defendants'

currently pled, falls flat. For these reasons, Plaintiff has failed to state a claim against Walgreens.  Therefore, Walgreens' Motion to Dismiss is GRANTED without prejudice and the claims against Walgreens for violations under the ADA, Rehabilitation Act, ACA, Unruh Act, and UCL are dismissed.

## IV.   CONCLUSION

Ultimately, the FAC is riddled with contradictions and inadequacies.  Given the facts alleged, it is uncertain at this stage whether the putative class itself is "disabled" under federal law.  See Hale v. King, 642 F.3d 492, 501 (5th Cir. 2011); Gaines v. Diaz, 2014 WL 4960794, at *6 (E.D. Cal. Oct. 1, 2014); Bain v. Transcor Am., LLC, 2009 WL 562586, at *5 (M.D. Tenn. Mar. 5, 2009).  Moreover, only one policy allegation could possibly constitute discrimination under federal law under a disparate impact or reasonable accommodation theory: Walgreens' alleged "dose and duration" restriction.  However, even this single suspect policy allegation appears implausible based on the facts pled in the FAC.[15]

There being no possibility of discrimination based on the alleged policy of declining to sell opioids, Costco's Motion to Dismiss (dkt. 41) is GRANTED and the claims against Costco are dismissed with prejudice.  See Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).  Walgreens' Motions to Dismiss (dkt. 35, 36) are also GRANTED and the claims against Walgreens are dismissed without prejudice.  Plaintiff may amend the FAC within thirty days of this order, if she wishes to do so, to address the deficiencies as to (1) a

---

businesses.  See Baughman, 685 F.3d at 1135 (listing "disruptions to business" as a factor).  While Plaintiff is correct that there is "no precise test for what constitutes a reasonable accommodation" (Pl. Response to Walgreens MTD (dkt. 53) at 18; Pl. Response to Costco MTD (dkt. 54) at 17), surely forcing a pharmacy to remove all restrictions on the sale of opioids to certain patients would not be an outcome the law intended.  See Johnson v. City of Blaine, 970 F.Supp.3d 893, 911 (D. Minn. 2013) (an accommodation is unreasonable if it eliminates an "essential function" of the service); Baughman, 685 F.3d at 1137 (pointing to "safety" as an overriding concern in granting accommodations).

[15]  The other at-issue policies cannot be discriminatory because they apply to and impact disabled and non-disabled persons equally.  See Doe v. CVS Pharmacy, Inc., 982 F.3d 1204, 1210 (9th Cir. 2020); Alexander v. Choate, 469 U.S. 287, 302 (1985).

disparate impact basis for lack of meaningful access and (2) a reasonable accommodation theory <u>only</u>.  At this point, the Court will not address the outstanding jurisdictional arguments regarding jurisdiction contained in WBA's Motion to Dismiss (dkt. 35).  <u>Jean v. Nelson</u>, 472 U.S. 846, 854 (1985) (internal quotations omitted); <u>Hospital & Service Employees Union v. NLRB</u>, 743 F.2d 1417, 1427 (9th Cir.1984).  In the event that Plaintiff amends the FAC to state a plausible claim of discrimination against Walgreens, the Court will address WBA's jurisdictional arguments at that time.

**IT IS SO ORDERED.**

Dated: February 3, 2021



CHARLES R. BREYER
United States District Judge