Thomas D. Haklar, CA Bar No. 169039
Peggy J. Reali (Of Counsel) SBN 153102
**LAW OFFICE OF THOMAS D. HAKLAR**
320 Encinitas Blvd., Suite A
Encinitas, CA 92024
Tel.: (858) 481-5454
Fax: (858) 720-9797
thaklar@haklarlaw.com

Scott D. Hirsch (*Pro Hac Vice to be filed*)
**SCOTT HIRSCH LAW GROUP, PLLC**
7301 W Palmetto Park Rd #207A
Boca Raton, FL 33433
Tel.: (561) 569-7062
scott@scotthirschlawgroup.com

Attorneys for Plaintiff and Others Similarly Situated
*[Additional Attorneys listed on signature page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| SUSAN SMITH, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>WALGREENS BOOTS ALLIANCE, INC., WAGDCO, LLC, COSTCO WHOLESALE CORPORATION and DOES 1-10,<br><br>        Defendants | Case No. 3:20-cv-05451-CRB<br><br>**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER GRANTING MOTIONS TO DISMISS AND GRANTING CONDITIONAL LEAVE TO AMEND, ENTERED ON FEBRUARY 3, 2021**<br><br>Honorable Charles R. Breyer<br>Courtroom 6, 17th Floor |

# **TABLE OF CONTENTS**

Page:

TABLE OF AUTHORITIES...................................................................................... ii

I.   INTRODUCTION........................................................................................... 1

II.  GROUNDS FOR RECONSIDERATION.............................................................. 3

  1.  The Court failed to consider and apply the facts as alleged in Plaintiff's FAC..................... 3

  2.  The Court failed to consider and apply the proper standard of review................................. 7

  3.  The Court failed to consider the 2008 amendments to the ADA and applied the wrong
      Standard for "Disability" under the ADA.................................................................. 9

  4.  The Court applied the wrong standard and failed to consider material facts in refusing
      to allow Plaintiff to amend the entirety of her FAC against both Defendants....................... 12

    A.  Costco..................................................................................................... 12

    B.  Walgreens................................................................................................ 15

CONCLUSION................................................................................................... 18

# **TABLE OF AUTHORITIES**

Page:

**Cases**

Alozie v. Arizona Board of Regents, 2017 WL 1153789 (D. Ariz. 2017) .................................. 18

Astiana v. Ben & Jerry's Homemade, Inc.,  2011 WL 2111796, at *15 (N.D. Cal. 2011)............. 8

City of San Francisco, No. 18-7591, Doc. 128, ¶201 & ¶¶ 191-544 ..................................... 2, 5, 7

Clerkin v. MyLife.Com,  2011 WL 3809912, at *3 (N.D. Cal. 2011) .......................................... 8

Doe v. CVS Pharmacy, Inc., 2020 WL7234964 (9th Cir. 2020)............................................. 13, 18

EEOC v. United Parcel Services, Inc., 306 F.3d 794 (9th Cir. 2002) .......................................... 10

Gillibeau v. City of Richmond, 417 F.2d 426, 432 (9th Cir.1969)................................................. 8

Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008)............................................... 13

Lopez v. Smith, 203 F.3d 1122, 1130-1 (9th Cir. 2000)................................................................. 16

Miller v. City of Los Angeles, 2014 WL12610195 *5 (C.D. Cal. 2014) ...................................... 13

Mireskandari v. Daily Mail and General Trust PLC, 2013 WL 12129642 *4 (C.D. Cal. 2013).. 13

Munoz v. California Department of Corrections and Rehabilitation, 2021 WL 58161 (9th Cir. 2021) .................................................................................................................................................. 10

PAE Government Services, Inc. v. MPRI, Inc., 514 F 3d 856, 860 (9th Cir. 2007) .................... 15

Parino v. BidRack, Inc., 838 F.Supp.2d 900, 909 (N.D. Cal. 2011) ............................................. 8

Reddy v. Litton Industries, Inc., 912 F. 2d 291 (9th Cir. 1990) ............................................. 12, 15

Rohr v. Salt River Project Agricultural Improvement and Power District, 555 F. 3d 850, 853 (9th Cir. 2009) ................................................................................................................................ 10

Soo Park v. Thompson, 851 F.3d 910, 928 (9th Cir. 2017), cert. denied, 138 S. Ct. 642 (2018) 13

Swain v. CACH, LLC, 699 F. Supp. 2d 1117, 1124 (N.D. Cal. 2009) ......................................... 8

Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184 (2002)................................................. 10

Updike v. Clackamas County, 2015 WL 7722410 *11 (D. Or. 2015) ........................................... 8

**Statutes**

29 C.F.R. §1630.2(j)(1)(i)...............................................................................................................11

29 C.F.R. §1630.2(j)(1)(ii)..............................................................................................................11

42 U.S.C. §12102(4)(A)....................................................................................................................9

Fed. R. Civ. P. 12..............................................................................................................................2

Fed. R. Civ. P. 8(a) & (d)(3) .................................................................................... 13

**Other Authorities**

ADA Amendments Act of 2008 §2(b)(5), 122 Stat. at 3554 ......................................... 9

Pursuant to local rule 7-9 and the Court's February 8, 2021 Order granting leave to file this motion for reconsideration, Plaintiff respectfully requests that the Court reconsider its February 3, 2021 Order (the "Order") granting the 12(b)(6) motions to dismiss filed by Walgreens Boots Alliance, Inc. ("Walgreens") and Costco Wholesale Corporation ("Costco") (jointly "Defendants") for the following reasons.[1]

## I.

## **INTRODUCTION**

The claims and the relief sought in this suit by Susan Smith should be adjudicated on their own merits under the standard applicable to Rule 12(b), and not by reference to the claims brought by the City of San Francisco in its separate suit, which addresses different issues and asserts separate and distinct legal theories. The *City of San Francisco* suit concerns a marketing driven and created class of opioid users, namely people suffering from "everyday aches and pains." Susan Smith's suit, by contrast, is more specific and limited; it concerns the class of people suffering constant, intractable pain caused by disabling diseases and conditions necessitating a legitimate medical need for opioid medication.

While both suits employ the term "chronic pain," the terms have very different meanings in each suit. Here, Plaintiff has alleged that Defendants, whether in an effort to protect and insulate themselves from claims such as asserted by the City of San Francisco or otherwise, created policies which in fact penalize and discriminate against those people with a legitimate need for opioid medication.[2] These are

---

[1]     In its February 3, 2021 Order, the Court gave Plaintiff 30 days to amend her disparate impact and reasonable accommodation claims against Walgreens. Plaintiff presumes this deadline is suspended pending her Motion for Reconsideration and would ask the Court to inform her if that presumption is mistaken.

[2]     This does not mean the policies apply equally to disabled and non-disabled persons. While the specifics of the Defendants' opioid policies are not presently known, Plaintiff alleges that the policies apply differently for opioid prescriptions exceeding certain dosage and duration limits typically required by disabled persons with a legitimate need for opioid medication.

the claims that are presently before the Court and for which Plaintiff is entitled to an adjudication, on this motion, under the standard applicable under Fed. R. Civ. P. 12.

More specifically, in its suit, the City of San Francisco alleges, in great detail, an aggressive and wide-ranging marketing plan that began in the 1980s designed to "open an enormous untapped market: patients with non-end-of-life, non-acute, everyday aches and pains." (*City of San Francisco*, No. 18-7591, Doc. 128, ¶201 & ¶¶ 191-544)  The City of San Francisco also alleges that in the early 2000s to the mid-2010s, as national publicity about opioid abuse spread, various defendants took actions designed to make it appear they were working to stop the spread of opioid abuse.

Susan Smith's suit, on the other hand, picks up in the mid-2010s as patients with legitimate medical need for long-term opioid medication found themselves unable to get their valid prescriptions for such medication filled as written by their duly licensed and DEA-registered treating physicians.  The problems Susan Smith and similar legitimate pain patients face in getting their prescriptions filled are not minor inconveniences and cannot be justified as necessary in the greater war against opioid abuse. She has alleged the denial of meaningful access, or any access at all, to her prescription opioid medication.  And for many pain patients who are shut out of access to their doctor-prescribed opioid pain medication by Defendant's draconian policies, the effects of untreated, enduring pain are life-altering and no less consequential to those patients than the addictions caused by the irresponsible practices of these same Defendants in the *City of San Francisco* suit.

In addition, during the hearing on Defendants' motions to dismiss, the Court posed a number of questions about the members of the putative Class in this case and its potential size, and a significant portion of the Order addresses Class issues.  Those issues, however, are not before the Court on the Defendants' motions and are more appropriately addressed on a motion for class certification or summary judgment, rather than on a Rule 12(b) motion to dismiss.

For the reasons discussed in detail below, the Court's concerns with the *City of San Francisco* suit and the potential Class in this case appear to have led the Court to misunderstand and fail to consider the allegations actually made by Plaintiff and also the applicable law.  Accordingly, the Court should vacate its February 3, 2021 order and deny Defendant's motions to dismiss or, in the alternative, grant Plaintiff leave to amend the entirety of her FAC against both Defendants.

## II.

## GROUNDS FOR RECONSIDERATION

1.    The Court failed to consider and apply the facts as alleged in Plaintiff's FAC.

Susan Smith is not before this Court because she has pain due to age, some routine medical or dental procedures or everyday aches and pain.  Her pain is not the same as what one might hear discussed by friends or family complaining about various routine and common ailments experienced by all people.  Her pain is the result of serious underlying medical conditions and major surgery.

Susan Smith has Epilepsy, causing her to suffer migraines, Complex Partial Seizures and Grand Mal seizures.  The Epilepsy also caused Mesial Temporal Lobe Sclerosis of her brain for which she had brain surgery.  In addition, following a car accident in which her lower leg was crushed, all bones in her right ankle were broken and she incurred open compound fractures to her tibia and fibula and a severe concussion, and Susan Smith had 6 surgeries to repair her knee, leg and ankle, with another surgery pending.  She also has an autoimmune problem and has been diagnosed with numerous other medical conditions.  While she may not experience her pain every minute of every day, it is constant, intractable and debilitating.

Her only relief from this pain is through opioid medication.  She has valid prescriptions for opioid medication issued to her by her long time treating, duly licensed physician as part of a course of long-term medical treatment.  These prescriptions are not forged.  She is not a drug seeker nor is she

abusing or diverting her opioid medication.  Rather, she requires this medication to make it through each day and have some semblance of a normal life.

Unfortunately, she has become an innocent victim of the war on opioids.  Nor is she alone.  Most Americans are completely unaware of her plight and the plight of the many others like her.  Instead, they see and treat her as nothing more than an addict.

The Court is aware of national concern over an opioid crisis which has led to efforts to restrict the distribution and dispensation of opioid medication.  What the Court, and most of the country, does not appreciate is the dramatic impact this push has had on people with severe and constant intractable pain who require opioid medication to live any sort of meaningful life or, in some cases, to simply make it through the day without wanting to commit suicide to stop their suffering.  A quick Google search will lead to numerous blogs, articles, news stories and Facebook groups describing the plight of these forgotten people.

As alleged in Plaintiff's FAC, beginning around 2013, pharmacies, including the Defendants' pharmacies, began imposing policies which affected the ability of Plaintiff to have her legitimate opioid prescription filled as written by her prescribing physician.  Things became markedly worse in 2016 after the Centers for Disease Control (the "CDC") published a Guideline on prescribing opioids.  This Guideline was only a recommendation for primary care providers and was explicitly not intended to apply to patients, such as Plaintiff, whose opioid prescriptions were generally for longer duration and higher doses than set forth in the Guideline.

The American Medical Association ("AMA") publicly complained that the Guideline was inappropriate, would be misapplied and would interfere with the doctor-patient relationship.  These concerns became true as pharmacies adopted the Guideline as part of hard and fast policies relating to the dispensing of opioid medication.  The situation became so bad that the CDC issued a public

statement against the misapplication of its Guideline, and some Boards of Pharmacy, such as the

Alaskan Board of Pharmacy, felt the need to publicly warn pharmacists against misapplying the

Guideline.

To be clear, Plaintiff does not allege that the Defendants created their opioid policies, including

the adoption of portions of the CDC Guideline as hard and fast rules, for purely civic purposes.  Rather,

Plaintiff alleges that they did so to protect themselves in response to increased enforcement by various

governmental bodies and against lawsuits, such as the *City of San Francisco* suit.  However, in doing so,

they have created and imposed policies which go too far and discriminate against people who have

legitimate prescriptions for opioid medication and are disabled.  Moreover, Defendants have enacted

policies that they know are inappropriate and/or with deliberate disregard for disabled people with

legitimate need for prescription opioid medication.

Plaintiff currently does not know the specifics of either the Costco or Walgreens opioid policy

because neither publicly provides the details of their respective policies.  She is aware, and has alleged,

that both have policies based on what she has been personally told and experienced and what she has

heard about the experiences of others.  For example, if the prescription exceeds certain dosage and/or

durations limits, usually those set forth in the CDC Guideline, the prescription will automatically be

subjected to additional policy requirements, which may or may not include a refusal to fill.  In addition,

Defendants' pharmacists might require a non-opioid prescription to go with the filling of certain opioid

prescriptions, the purpose of which is simply to keep the particular store's percentage of opioid to non-

opioid prescriptions within a certain range.

The Order appears to read the FAC as alleging that Walgreens has a number of different opioid

policies and that the "dose and duration" policy is one which restricts the sale of opioids above a certain

dose and duration.  (See Order, p. 17)  This is not a correct reading of the FAC or, alternately, is not

what Plaintiff intended to allege.  Plaintiff alleges that Walgreens has a single opioid policy, but one which appears to have a number of different requirements or which leads to the imposition of certain requirements which the Order construes as different policies.  (FAC, ¶¶55-58 & 61)  Similarly, Plaintiff does not allege that Walgreens has a policy against dispensing opioid prescriptions which exceed certain dose or duration limits.  Rather, as stated above, Plaintiff alleges that if an opioid prescription exceeds certain dosage or duration limits, specifically those set out in the CDC Guideline, the Walgreens policy imposes additional requirements – not imposed on other opioid prescriptions – that may result in a refusal to fill the prescription at all or the filling of reduced medication.

These policies do not impose only minor additional inconvenience on disabled people needing prescription opioid medication while still providing meaningful access to them.  Instead, they impose several impediments to these people's access to their medication or risks that their medication will not be filled as prescribed.  The first is that there will be a refusal to fill, i.e., no access at all to their prescription opioid medication.  The next obstacle or risk is that the prescription will be filled, but not as written, i.e., for a shorter duration, lower dose or for substitute medication.  This access is not meaningful because it interferes with the doctor-patient relationship and prevents access to the medication *as prescribed*.  Yet another obstacle is that other requirements may be imposed before the prescription will be filled (in whole or in part), which is no more proof of meaningful access than "separate but equal" was a valid defense to claims of racial discrimination.

The Order notes that in the *City of San Francisco* case, the Court found that pharmacies, as entities in the opioid stream of commerce, are obligated to provide effective controls and procedures to guard against theft and diversion of controlled substances.  The Order also notes that while the Plaintiffs in the *City of San Francisco* case seek to hold Defendants accountable for not doing enough, Susan Smith alleges Defendants have gone too far.

That is generally correct, but it does not make the suits mutually exclusive or inconsistent with each other. Plaintiff does not argue that Defendants have no obligation to rectify a situation which it is alleged they helped to create. Instead, she points out that in an attempt to appease one group, Defendants have created and imposed policies that harm another innocent group in violation of their civil rights and other laws.

It goes without saying that an innocent person should not be forced to suffer due to the bad acts of another person, and a party cannot violate one set of laws to avoid violating another set of laws. Plaintiff seeks to move Defendants' opioid policies and actions back to the middle ground which protects against improper dispensation of opioid medication while at the same time not punishing people validly entitled to dispensation of such medication.

2.    The Court failed to consider and apply the proper standard of review.

Although the Court's Order cites the general rules applicable to review of a motion to dismiss, its ruling goes beyond the bounds of the Defendants' motions and the applicable standard of review and appears driven primarily by concerns about the putative Class and its potential size. The Order contains a lengthy a section titled: "Plaintiff has not plausibly alleged that the purported class is disabled." (Order, pp. 8-13) The Order acknowledges that Plaintiff herself is disabled, but goes on to state: "However, the question here is whether all members of the putative class are unable to (or significantly restricted from performing) a major life activity such that they are properly considered 'disabled' under federal law." (Order, pp. 9-10) In another section, the Court states: "Second, Plaintiff's 'regarded as' theory is unsupported in the pleadings and, if accepted, would result in an overly broad class that federal disability law was never meant to protect." (Order, p. 12) In its Conclusion, the Order states: "Given the facts alleged, it is uncertain at this stage whether the putative class itself is 'disabled' under federal law." (Order, p. 21)

However, there was/is no motion before the Court seeking class certification, and it appears the Court granted the motions to dismiss based on its class certification concerns.  The Ninth Circuit has held that "compliance with Rule 23 is not to be tested by a motion to dismiss for failure to state a claim." *Gillibeau v. City of Richmond,* 417 F.2d 426, 432 (9th Cir.1969); *see also Parino v. BidRack, Inc.,* 838 F.Supp.2d 900, 909 (N.D. Cal. 2011); *Swain v. CACH, LLC,* 699 F. Supp. 2d 1117, 1124 (N.D. Cal. 2009).  *See also Astiana v. Ben & Jerry's Homemade, Inc.,* 2011 WL 2111796, at *15 (N.D. Cal. 2011) ("In this court's view, the questions whether the class is ascertainable and whether a class action is superior should be resolved in connection with a class certification motion."); *Clerkin v. MyLife.Com,* 2011 WL 3809912, at *3 (N.D. Cal. 2011) ("Defendants fail to identify any authority permitting the use of a motion to dismiss for failure to state a claim to contest the suitability of class certification.").

In *Updike v. Clackamas County,* 2015 WL 7722410 *11 (D. Or. 2015), the Court stated:

As noted by the Northern District of California, at least three problems exist with attacking the sufficiency of a plaintiff's class action claims in a motion to dismiss.  *Clerkin v. MyLife.Com,* 2011 WL 3809912, at *3-4 (N.D. Cal. Aug. 29, 2011). First, Rule 12(b)(6) permits a defendant to assert that the opposing party has failed "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A class action is a "procedural device," not a claim for relief.  *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper,* 445 U.S. 326, 331 (1980).  Second, other Federal Rules of Civil Procedure exist to address improper class action allegations. . . . Finally, the standard of review applied to orders granting motions to dismiss differs from standards governing orders granting motions to strike and denying class certification. . . .

Numerous district courts have held that even when a plaintiff's class allegations appear suspicious at the pleading stage, a plaintiff should at least have an opportunity to make

the case for class certification following appropriate discovery. *E.g.*, *Shein v. Canon U.S.A., Inc.*, 2009 WL 3109721, at *10 (C.D. Cal. Sept. 22, 2009); *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *7 (S.D. Cal. May 22, 2009); *In re Saturn L–Series Timing Chain Prods. Liab. Litig.*, 2008 WL 4866604, at *24 (D. Neb. Nov. 7, 2008); *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615-16 (N.D. Cal. 2007); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2006 WL 3422198, at *3 (N.D. Cal. Nov. 28, 2006).

Here, the Court appears to have implicitly, if not explicitly, made determinations with respect to the Class that Plaintiff seeks to represent that are more properly made in connection with a motion for class certification, following adequate opportunity for discovery, and used those determinations as a basis for granting Defendants' motions to dismiss.[3]

3.     The Court failed to consider the 2008 amendments to the ADA
       and applied the wrong standard for "disability" under the ADA.

Effective January 1, 2009, Congress passed the ADA Amendments Act of 2008 ("ADAAA"). The ADAAA was a significant expansion of what constitutes a "disability" under the ADA. It directs that "disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter," 42 U.S.C. §12102(4)(A), and provides that establishing a disability under the ADA should "not demand extensive analysis." ADAAA §2(b)(5), 122 Stat. at 3554.

---

[3]     The Order devotes much discussion to whether a class of chronic and/or acute pain patients are "disabled" and concludes that the proposed class "consists of disabled and nondisabled people at best." (Order, p. 13) In addition to being an issue more appropriate to a class certification motion, Plaintiff believes this conclusion is based on an incorrect reading and understanding of her allegations. However, rather than risk being perceived as rearguing the issue, Plaintiff believes it is better addressed by allowing her to replead and clarify her allegations and/or reserve the issue to a motion for class certification.

However, in its discussion of "disability" under the ADA, the Order cites and relies on law superseded by the 2008 amendments to the ADA.  The Order highlights that disability under the ADA requires an impairment that *substantially limits* one or more major life activities.  It goes on to state that: "To be substantially limited, a person must be completely unable to perform a major life activity or be 'significantly restricted as to condition, manner, or duration' of a major life activity as compared to the average person," citing *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184 (2002) and *EEOC v. United Parcel Services, Inc.*, 306 F.3d 794 (9th Cir. 2002)(citing and relying on *Toyota*).  (Order, p. 9)

This is an incorrect statement of the law.  The Ninth Circuit has recognized that *Toyota* was overruled by the ADAAA.  In *Rohr v. Salt River Project Agricultural Improvement and Power District*, 555 F. 3d 850, 853 (9th Cir. 2009), the Court stated:

> At the outset, we note that on September 25, 2008, while this decision was pending, the ADA Amendments Act of 2008 ("ADAAA") was signed into law in order "[t]o restore the intent and protections of the Americans with Disabilities Act of 1990."  Pub. L. No. 110–325, 122 Stat. 3553 (2008).  In the ADAAA, Congress emphasizes that when it enacted the ADA in 1990, it "intended that the Act 'provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities' and provide *broad* coverage."  *Id.* §2(a)(1), 122 Stat. at 3553 (emphasis added).  The ADAAA rejects the Supreme Court's interpretation of the term "disability" in *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), and thereby expands the class of individuals who are entitled to protection under the ADA.  *Id.* §2(b), 122 Stat. at 3553.  Indeed, Congress signifies that as a result of these Supreme Court cases, "lower courts have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities."  *Id.* §2(a)(5), 122 Stat. at 3553.

More recently, in *Munoz v. California Department of Corrections and Rehabilitation*, 2021 WL 58161 (9th Cir. 2021), the Ninth Circuit reaffirmed this position, holding:

> The district court erred when it applied an expressly superseded legal standard to conclude that Munoz did not have a qualifying disability within the meaning of the ADA. The relevant statutory provision defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. §12102(1)(A).  In the ADA Amendments Act of 2008 ("ADAAA"), Congress added rules of construction for courts to apply in resolving questions of disability.  These rules provide, *inter alia*, that the "definition of disability ... shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter," *id.* §12102(4)(A), and that an "impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability," *id.* §12102(4)(C).
>
> Additionally, Congress specifically "reject[ed] the standards enunciated by the Supreme Court in *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002), that the terms 'substantially' and 'major' in the definition of disability under the ADA 'need to be interpreted strictly[.]"  Pub. L. No. 110–325, §2(b)(4), 122 Stat. 3553, 3554 (2008); *see Rohr v. Salt River Project Agric. Imp. & Power Dist.*, 555 F.3d 850, 853 (9th Cir. 2009).
>
> In concluding that Munoz was not disabled, the district court relied on *Toyota Motor's* interpretation of "substantially" as meaning "considerable" or "to a large degree."  *Toyota Motor*, 534 U.S. at 196, 122 S. Ct. 681.  Applying that interpretation, the district court held that Munoz had not provided sufficient evidence that he was substantially limited in the major life activity of climbing.  The court reasoned that Munoz had only shown that he had difficulties climbing to an upper bunk, not that he had

trouble "climbing stairs or anything" else.  The district court concluded that "difficulty climbing to an upper bunk qualifies as an impairment, but it does not qualify as a substantial limitation on [Munoz's] major life activity of climbing."

The district court thus erred in relying on the superseded *Toyota Motor* standard and ignoring the ADAAA's liberal rules of construction.  We remand for the district court to apply the proper standard to the question of whether Munoz has a qualifying disability.  *See Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 434–35 (9th Cir. 2018).

Contrary to the Order's statement of the law, an "impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 29 C.F.R. §1630.2(j)(1)(ii).  Whether an impairment "substantially limits" a major life activity "is not meant to be a demanding standard" and "shall be construed broadly in favor of expansive coverage." 29 C.F.R. §1630.2(j)(1)(i).  Further,

Consideration of facts such as condition, manner, or duration may include, among other things, consideration of the difficulty, effort, or time required to perform a major life activity; pain experienced when performing a major life activity; the length of time a major life activity can be performed; and/or the way an impairment affects the operation of a major bodily function.  Furthermore, the non-ameliorative effects of mitigating measures, such as negative side effects of medication or burdens associated with following a particular treatment regimen, may be considered when determining whether an individual's impairment substantially limits a major life activity.

29 C.F.R. §1630.2(j)(4)(ii).

The Order also cites a number of cases which pre-date or do not apply the ADAAA and, thus, are inapposite in discussing whether chronic or acute pain can be considered disabling under the ADA.  (Order, pp. 10-12)

As discussed in footnote 2, *supra*, much of the discussion regarding determining "disability" under the ADA appears in conjunction with the Order's discussion of the proposed Class and whether it includes non-disabled persons.  Again, Plaintiff believes the Order misreads the proposed Class definition and that this issue is inappropriate in connection with a motion to dismiss.

4.      The Court applied the wrong standard and failed to consider material facts in
        <u>refusing to allow Plaintiff to amend the entirety of her FAC against both Defendants</u>.

In the alternative, if the Court does not vacate its Order granting one of both of the Defendants' motions to dismiss, the Court applied the wrong standard and failed to consider material facts in refusing to allow Plaintiff to amend her FAC with respect to each Defendant in its entirety.

        A.      <u>Costco</u>

The Order refuses to allow Plaintiff to amend her FAC with regard to Costco on the basis that "for Plaintiff to allege a discriminatory opioid policy at Costco, she would necessarily contradict her original allegation that Costco does not sell opioids to anyone," citing *Reddy v. Litton Industries, Inc.*, 912 F. 2d 291 (9th Cir. 1990).  (Order, p. 14)  However, Plaintiff should be allowed to amend her FAC with regard to Costco because (1) there would be no contradiction with her original allegations and (2) even assuming there would be a contradiction, (i) Plaintiff is allowed to plead inconsistent allegations, (ii) leave to amend should be freely given and (iii) the amendment would correct Plaintiff's allegations based upon an admission by Costco's counsel.

As an initial matter, Federal Rule 8 requires only a "short and plain statement of the claim" and allows a party to state "as many separate claims or defenses as it has, regardless of consistency."  Fed. R. Civ. P. 8(a) & (d)(3).  The Rule also instructs that "Pleadings must be construed so as to do justice."  Fed. R. Civ. P. 8(e).  Similarly, as the Court is aware, in reviewing a motion to dismiss, the Court must

accept all of Plaintiff's well-pleaded facts as true, analyze those facts in the light most favorable to Plaintiff and draw all reasonable inferences in favor of Plaintiff. *Doe v. CVS Pharmacy, Inc.*, 2020 WL7234964 (9th Cir. 2020); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Pleadings can also be based on information and belief. *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 642 (2018) ("The *Twombly* plausibility standard ... does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."); *Miller v. City of Los Angeles*, 2014 WL12610195 *5 (C.D. Cal. 2014)(recognizing that pleadings on "information and belief" are allowed and "necessary at times"). *See also Mireskandari v. Daily Mail and General Trust PLC*, 2013 WL 12129642 *4 (C.D. Cal. 2013).

The Court's conclusion that any amendment with regard to Costco would necessarily contradict Plaintiff's original allegations relies upon an overly strict reading of Plaintiff's FAC. While much of the argument in connection with Costco's motion for dismiss was based upon the assumption of a Costco policy of not selling any opioids, Plaintiff's allegations are not that limited.

In ¶66 of the FAC, Plaintiff pleads: "Upon information and belief, Costco flatly refuses to fill opioid prescriptions or possibly for certain opioid medication, either as a matter of express or implicit policy. In the alternative, individual pharmacists employed by Costco are flatly refusing to fill prescriptions for opioid medication or possibly for certain opioid medication."

In ¶93 of the FAC, Plaintiff pleads:

Similarly, Mrs. Smith has had her prescriptions for opioid medication rejected without explanation by Costco. There are two Costco warehouses located in Danville and Livermore, Ca. near her home. At one of the warehouses, she presented her prescription for opioid medication and the pharmacist would not entertain filling it, giving it back to her without explanation. Her husband, who was with her, pleaded with the pharmacist to fill the prescription, but was flatly told "no." At the other warehouse, Mrs. Smith tried

talking to the pharmacy manager, who told her that Costco did not sell her medication, then walked away leaving her prescription on the counter.

From the FAC, it is clear that Plaintiff does not know exactly what opioid policy Costco has, only that it has one. One inference from the facts pled in ¶93 is that the policy is to not sell opioids at all. However, in ¶66, Plaintiff pleads, upon information and belief, that the Costco policy is one of refusing to fill any opioid prescriptions or a refusal to fill only some opioid medication, with the treatment of other opioid medication uncertain. The allegation goes on to plead, in the alternative, that individual Costco pharmacists were refusing to fill any opioid prescriptions or possibly only certain opioid prescriptions. Thus, an allegation that Costco has an opioid policy which allows the filling of certain opioid prescriptions or all opioid prescriptions under certain conditions is not inconsistent with the current allegations.

Even assuming there would be a contradiction in the allegations, Plaintiff is allowed to amend under the law. A crucial fact is that Costco's attorney informed the Court during the hearing on its motion to dismiss that Costco does in fact sell opioid medication (though, notably, no details of the policy were given). Thus, an amendment of Plaintiff's FAC to allege the existence of a Costco opioid policy would be alleging an admitted fact. There is absolutely no precedent for refusing to allow an amendment to add an admitted fact, whether it results in a clarification or correction of prior allegations. A contrary ruling, such as set forth in the Court's Order, turns the Federal Rules, which allow for inconsistent allegations and mandate liberal amendments, on their head. Indeed, it has the effect of locking a party into allegations which subsequently prove to be incorrect.

Nor does *Reddy* require a different result. In *PAE Government Services, Inc. v. MPRI, Inc.*, 514 F 3d 856, 860 (9th Cir. 2007), the Ninth Circuit stated: "The short of it is there is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations. Unless there is a showing that the party acted in bad faith—a showing

that can only be made after the party is given an opportunity to respond under the procedures of Rule 11—inconsistent allegations are simply not a basis for striking the pleading."

The Court further explained:

At the time a complaint is filed, the parties are often uncertain about the facts and the law; and yet, prompt filing is encouraged and often required by a statute of limitations, laches, the need to preserve evidence and other such concerns.  In recognition of these uncertainties, we do not require complaints to be verified, see Fed. R. Civ. P. 11(a), and we allow pleadings in the alternative – even if the alternatives are mutually exclusive.  As the litigation progresses, and each party learns more about its case and that of its opponents, some allegations fall by the wayside as legally or factually unsupported.  This rarely means that those allegations were brought in bad faith or that the pleading that contained them was a sham.  Parties usually abandon claims because, over the passage of time and through diligent work, they learn more about the available evidence and viable legal theories, and wish to shape their allegations to conform to these newly discovered realities.  We do not call this process sham pleading; we call it litigation.

*PAE*, 514 F. 3d at 858-9.[4]  *See also Ramirez v. City of Phoenix*, 2013 WL 474361 (D. Ariz. 2013).

In the present case, it is now undisputed that Costco does sell opioids, although the exact parameters and specifics are still unknown.  Those specifics can easily be determined through discovery, and Plaintiff should be allowed to amend the federal and state law claims in her FAC with regard to Costco.

---

[4]    *See Shirley v. University of Idaho, College of Law*, 800 F.3d 1193 (9th Cir. 2015), for a discussion of *Reddy* and *PAE*.

B.   <u>Walgreens</u>

The Order allows Plaintiff to amend her disparate impact and reasonable accommodation claims with regard to Walgreens, but not her intentional discrimination claim.  The Order does not specify why this amendment is not allowed.  In one place, it states blanketly that: "Plaintiff has alleged no facts supporting a theory of intentional discrimination."  (Order, p. 15)  While Plaintiff disagrees with this conclusion, even if correct, it is not a basis for refusing to allow Plaintiff to amend to allege such facts.

In *Lopez v. Smith*, 203 F.3d 1122, 1130-1 (9th Cir. 2000), the Ninth Circuit stated:

As noted above, Federal Rule of Civil Procedure 15(a) provides that a trial court shall grant leave to amend freely "when justice so requires."  The Supreme Court has stated that "this mandate is to be heeded."  *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).  In addition, we have repeatedly held that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  *Doe,* 58 F.3d at 497.

The dismissal without leave to amend was therefore contrary to our longstanding rule that "[l]eave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.'"  *Balistreri,* 901 F.2d at 701 (quoting *Breier v. Northern California Bowling Proprietors Association, 316 F. 2d 787, 790 (9th Cir. 1963)).*

There is no conclusion in the Order that Plaintiff is unable to allege *any* facts supporting intentional discrimination.  The closest the Order comes to such a finding is its statement that: "The crux of Plaintiff's allegations is that Defendants have misapplied the CDC Guidelines in good faith."  (Order, p. 15)  Thus, the Court may have concluded that an amendment alleging intentional discrimination

would contradict Plaintiff's current allegations. However, even assuming this to be the basis of the Court's reasoning, it is not a valid basis for not allowing Plaintiff leave to amend this claim for two reasons. First, for the reasons discussed above regarding the Costco amendment, the potential for contradiction is not a basis for disallowing amendment. Second, and more importantly, the Court's statement is a misinterpretation of Plaintiff's allegations.

In support of its assertion that the "crux of Plaintiff's allegations is that Defendants have misapplied the CDC Guidelines in good faith," the Order refers to two paragraphs in the FAC as calling the Defendants' policies "laudable in concept" and "misguided attempts to reduce illicit access to painkillers." (Order, p. 15) But, the FAC does not allege "good faith" by Walgreens. What the FAC alleges is that: "While some may be laudable in concept, the express and implicit policies as adopted by Walgreens are misguided attempts to reduce illicit access to painkillers by punishing patients who have, and need, legitimate access to such medication." (Complaint ¶¶ 60, 66) Plaintiff is not alleging that Walgreens had no discriminatory intent; she alleges that while attempting to rectify past failures, Walgreens has swung the pendulum too far and is deliberating discriminating against innocent disabled persons who need opioid medication and have legitimate prescriptions for that medication.[5]

It is unclear whether the Court may have instead refused leave to amend the intentional discrimination claim based on its reading of the FAC as alleging a facially neutral policy. *See* Order, p. 8. As an initial matter, the existence of a facially neutral policy does not automatically exclude the possibility of an intentional discrimination claim or vice-versa. *See, e.g., Alozie v. Arizona Board of Regents*, 2017 WL 1153789 (D. Ariz. 2017). The Order states that the policy alleged by Plaintiff does

---

[5]     The test for intentional discrimination is deliberate indifference, which requires knowledge that a harm to a federally protected right is substantially likely and a failure to act upon that likelihood. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138-39 (9th Cir. 2001).

not "uniquely burden chronic pain patients." (Order, p. 18)  But, besides being an incorrect reading of Plaintiff's allegations, this is not the correct standard.  In *Doe v. CVS Pharmacy, Inc.*, 2020 WL7234964 (9th Cir. 2020), the Ninth Circuit reversed the dismissal of Plaintiff's claims and held in pertinent part:

> Finally, the district court erred by requiring that Does plead allegations showing the Program impacts people with HIV/AIDS in a unique or severe manner.  The meaningful access standard in *Choate* does not require Does to allege that their deprivation was unique to those living with HIV/AIDS, nor that the deprivation was severe – only that they were not provided meaningful access to the benefit.

*Doe*, 2020 WL7234964 *14-5 (citations omitted).

Finally, Plaintiff would add that, as a practical matter, there is no prejudice in allowing her to amend the FAC with respect to the intentional discrimination claim since she has been granted leave to amend with respect to her other disability discrimination claims.[6]

### III.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court reconsider and vacate its February 3, 2021 Order Granting Defendants' Motions to Dismiss and Granting Conditional Leave to Amend that the Court and deny the motions to dismiss filed by Walgreens and Costco, or, in the

---

[6]     The Order says nothing specific about the state law claims against Walgreens.  Because the Unruh Act claim is based on violation of the federal laws and she is allowed to amend her disparate impact and reasonable accommodation claim, Plaintiff presumes there is no need to amend, nor any preclusion of her from amending, this claim.  The Order is less clear regarding the UCL claim and appears to require her to plead fraud under the UCL with more particularity. (Order, p. 14 n. 9)  Plaintiff presumes that she is not precluding from doing so, if necessary, after consideration of this Motion for Reconsideration.  However, if this presumption is incorrect, Plaintiff asks that the Court reconsider and allow her to plead fraud under the UCL with more particularity for the same reasons as discussed herein.

alternative, allow Plaintiff to replead all claims with respect to both Defendants, and for all other relief to which she is justly entitled.

Dated: February 15, 2021                                   Respectfully Submitted,

/s/ Thomas D. Haklar
Thomas D. Haklar, CA Bar No. 169039
Peggy J. Reali (Of Counsel) SBN 153102
**LAW OFFICE OF THOMAS D. HAKLAR**
320 Encinitas Blvd., Suite A
Encinitas, CA 92024
Tel.: (858) 481-5454
Fax: (858) 720-9797
thaklar@haklarlaw.com

Scott D. Hirsch (*pro hac vice*)
SCOTT HIRSCH LAW GROUP
7301 W Palmetto Park Rd #207A
Boca Raton, FL 33433
Telephone:  (561) 569-7062
(scott@scotthirschlawgroup.com)

Joseph A. Bruno *(Pro Hac Vice)*
BRUNO & BRUNO
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile:  (504) 581-1493
(jbruno@brunobrunolaw.com)

Robert Redfearn (*pro hac vice*)
Robert L. Redfearn, Jr. (*pro hac vice*)
30th Floor, Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-3000
Telephone:  (504) 569-2030
Facsimile:  (504) 569-2999
(Robertr@SPSR-law.com)
(Robertjr@SPSR-law.com)

00899636-1

Mark Kepple (*pro hac vice*)
1219 Chapline Street
Wheeling, W. Va.  26003
Telephone: (304) 233-3100
Facsimile:  (304) 343-3133
(mkepple@baileywyant.com)

Theodore Huge (*pro hac vice*)
HARRIS & HUGE, LLC
180 Spring Street
Charleston, SC 29403
Telephone:  (843) 805-8031
Facsimile:  (843) 636-3375
(ted@harrisandhuge.com)

Attorneys for Plaintiff Susan Smith and all those similarly situated.