Thomas D. Haklar, SBN 169039
Peggy J. Reali, SBN 153102
LAW OFFICE OF THOMAS D. HAKLAR
320 Encinitas Blvd., Suite A
Encinitas, CA 92024
Tel:  858 481-5454
Fax:  858 720-9797
thaklar@haklarlaw.com

Scott D. Hirsh (Pro Hac)
SCOTT HIRSCH LAW GROUP, PLLC
7301 W. Palmetto Park Road, #207A
Boca Raton, FL 33433
Tel:  561 569-7062
scott@scotthorschlawgroup.com

Attorneys for Plaintiff and Others Similarly Situated
*(Additional Attorneys on Signature page)*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN SMITH, individually and on behalf of all others similarly situated, | Case No.: 3:20-cv-05451-CRB |
| *Plaintiff,* | |
| vs. | **PLAINTIFFS MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO 12(B)(6) MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES FILED BY COSTCO WHOLESALE CORP. FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED** |
| WALGREENS BOOTS ALLIANCE, INC., WAGDCO, LLC, WALGREENS CO, COSTCO WHOLESALE CORPORATION, and DOES 1-10, | |
| *Defendants.* | |
| | Honorable Charles R. Breyer |
| | Hearing Date:  June 18, 2021 |
| | Hearing Time:  10:00 a.m. |
| | Courtroom:  06,  17th Floor |

# TABLE OF CONTENTS

I.     PLAINTIFFS MEMORANDUM OF POINTS AND AUTHORITIES..........................................1

II.    NATURE OF THE CASE...................................................................................................1

III.   STATEMENT OF THE ISSUES AND SUMMARY OF ARGUMENT......................................3

IV.    STANDARD OF REVIEW.................................................................................................8

V.     PLAINTIFF HAS ALLEGED THAT COSTCO'S POLICY DISCRIMINATES ON THE

       BASES OF DISABILITY...................................................................................................9

       A.     THE COSTCO OPIOID DISPENSING.............................................................9

       B.     THE POLICY DISCRIMINATES ON THE BASIS OF DISABILITY.........................10

       C.     THE COSTCO POLICY RESULTS IN DISPARATE TREATMENT..........................13

       D.     PLAINTIFF LACKS EANINGFUL ACCESS UNDER THE COSTCO POLICY..........14

       E.     PLAINTIFF HAS ADEQUATELY ALLEGED A NECESSARY AND........................16

              REASONABLE MODIFICATION TO COSTCO'S POLICY

VI.    PLAINTIFF'S CLAIMS DO NOT SEEK RELIEF FOR THE "INADEQUATE

       TREATMENT OF A DISABILITY" BY PHARMACISTS.........................................................21

VII.   PLAINTIFF'S CALIFORNIA STATE LAW CLAIMS MAY NOT BE DISMISSED...............22

VIII.  CONCLUSION...............................................................................................................23

# Table of Authorities

## Cases

*Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001) .................................. 3

*Aguirre v. California School of Court Reporting (CSCR)—Riverside*, 2016 WL 7635957 *3 (C.D. Ca.
   2016)............................................................................................................................................ 16

*Bain v. Transcor Am., LLC*, 2009 WL 562586 (M.D. Tenn. 2009).  (Doc. 76, p. 12.) ........................... 12

*Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 555 & 570 (2007)............................................................... 8

*Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204 (9th Cir. 2020) ................................................................. 8,10

*Dunlap v. Ass'n of Bay Area Gov'ts,* 996 F. Supp. 962, 965 (N.D. Ca. 1998)........................................ 19

*Duvall v. County of Kitsap*, 260 F.3d 1124, 1138-39 (9th Cir. 2001) ...................................................... 14

*Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 950 (8th Cir. 1999) ................................................. 19

*Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44–5 (1st Cir. 2012) ............................................................. 8

*Hale v. King*, 642 F. 3d 492 (5th Cir. 2011) ........................................................................................... 12

*Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) .............................................................................. 23

*Johnson v. City of Blaine*, 970 F.Supp.2d 893, 911 (D. Minn. 2013)................................................... 6,19

*Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) ........................................................... 8

*Ledford v. Sullivan*, 105 F. 3d 354, 356 (7th Cir. 1997)......................................................................... 23

*Munson v. Del Taco, Inc.*, 208 P.3d 623 (Ca. 2009)............................................................................... 23

*National Federation of the Blind v. Lamone*, 813 F.3d 494, 507 (4th Cir. 2016) ................................. 6,21

*Nunes v. Massachusetts Dept. of Correction*, 766 F.3d 136, 144 (1st Cir. 2014) ................................. 23

*Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160  (9th Cir. 2013) ................. 2,13

*Pickens v. Astrue*, 252 Fed. Appx. 795, 796 (9th Cir. 2007) .................................................................. 19

*Presta v. Peninsula Corridor Joint Powers Bd.,* 16 F.Supp.2d 1134, 1136 (N.D. Ca. 1998) ................. 19

Plaintiff's Opposition to Defendant Costco Wholesale Corp.s' Motion to Dismiss Second Amended Complaint

*Stone v. City of Mount Vernon*, 118 F.3d 92, 98 (2d Cir. 1997)................................................ 19

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, (2002)............................................................ 8

*Tauscher v. Phoenix Board of Realtors, Inc.*, 931 F. 3d 959, 964-5 (9th Cir. 2019).............................. 17

*Tsombanidis v. West Haven Fire Dept.*, 352 F.3d 565, 573 (2d Cir. 2003) .................................... 23

*Wirey v. Richland Community College*, 913 F.Supp.2d 633 (C.D. Ill. 2012).................................... 11

### **Statutes**

42 U.S.C. §12102(4)(A)................................................................................ 11

42 U.S.C. §12102(4)(D)................................................................................ 11

ADAAA §2(b)(5), 122 Stat. at 3554.............................................................. 10,11,12

### **Regulations**

21 C.F.R. § 1306.04(a)................................................................................ 20

### **Rules**

Federal Practice & Procedure §1356, at 354 (3d ed. 2004) ................................................ 1,8

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### INTRODUCTION

The parties are before this Court on a motion to dismiss under Federal Rule 12(b), not a motion for summary judgment or class certification.  Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the allegations in a complaint, not to resolve the case on the merits.  5B Wright & Miller, *Federal Practice & Procedure* §1356, at 354 (3d ed. 2004).  Yet, in addressing Plaintiff's allegations in the Second Amended Complaint ("SAC")[1], the crux of many of Costco's arguments is that those allegations do not *prove* some supposedly required element.  Plaintiff's allegations are to be taken as true, but Costco frequently argues either that Plaintiff's allegations are not true or blanketly asserts, in its own conclusory fashion, that Plaintiff's allegations are conclusory.  Indeed, many of Costco's arguments raise fact questions over what can or cannot be proven and what should or should not be believed.  This is not the standard by which the SAC is to be judged.

### II.

### NATURE OF THE CASE

Costco's and Walgreens' characterizations of  Susan Smith's claims are purposeful distortions to advance their arguments for dismissal.  At its heart, her case is one of over-discrimination.  Susan Smith is an innocent victim of the war on opioid abuse.  And she is not alone.  To protect themselves from potential liability for claims resulting from their alleged role in creating the national

---

[1]     The SAC is document no. 71 on the docket for this case.

opioid abuse crisis, such as asserted in the *City of San Francisco* suit[2], the Defendants in this suit, whose alleged contribution to the Opioid crisis was to fail to properly evaluate prescriptions, have adopted corporate wide Policies for the dispensing of opioids which still do not properly evaluate the prescription itself but instead focus on the person attempting to fill the prescription and are predisposed to refusing to fill the prescriptions as written.

The Policies incorporate dosage and duration limits set out in the 2016 CDC Guideline for Prescribing Opioids (the "CDC Guideline"), despite clear and public warnings – made before and after their incorporation into the Policies - that the Guideline was not meant to be applied by pharmacists, was not meant to be applied to prescriptions for patients such as Susan Smith and was being inappropriately applied in their Policies.   When an opioid prescription exceeds those limits, the Policies incentivize/coerce the pharmacist to refuse to fill the prescription as written based on a subjective evaluation of the person attempting to get the prescription filled and/or a "reevaluation" of the doctor's treatment decisions.

The Ninth Circuit has warned against the disingenuousness of these types of arguments, observing that: "The principle that overdiscrimination is prohibited undergirds all of constitutional and statutory anti-discrimination law, although it often goes unsaid precisely because it is so foundational." *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160  (9th Cir. 2013), *cert. denied*, 574 U.S. 974 (2014).  The Ninth Circuit further noted that: "A willingness to inflict collateral damage by harming some, or even all, individuals from a favored group in order to successfully harm members of a disfavored class does not cleanse the taint of discrimination; it simply underscores the depth of the defendant's animus." *Id*.

Over-discrimination can lead to a "grotesque scenario" described by the Ninth Circuit as follows:

---

[2]    *See City of San Francisco*, No. 18-7591, Doc. 128, ¶201 & ¶¶ 191-544.

Plaintiffs in anti-discrimination suits would be unable to demonstrate the discriminatory intent of a defendant that openly admitted its intent to discriminate, so long as the defendant (a) relies on a facially neutral law or policy and (b) is willing to "overdiscriminate" by enforcing the facially neutral law or policy even against similarly-situated individuals who are not members of the disfavored group. Such a rule presents the "grotesque scenario where a[ ] [defendant] can effectively immunize itself from suit if it is so thorough in its discrimination that all similarly situated [entities] are victimized." *Abdu–Brisson v. Delta Air Lines, Inc.,* 239 F.3d 456, 468 (2d Cir. 2001).

This "grotesque scenario" is not the law. *Id.* A willingness to inflict collateral damage by harming some, or even all, individuals from a favored group in order to successfully harm members of a disfavored class does not cleanse the taint of discrimination; it simply underscores the depth of the defendant's animus. *See, e.g., Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.,* 377 U.S. 218, 231, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964) (holding that although a county has the legal power to close all of its public schools, it could not do so for the purpose of preventing children from attending desegregated schools).

*Id.,* at 1159-60.

Costco' Motion to Dismiss is premised upon this "grotesque scenario" and should be denied.

## III.

## STATEMENT OF THE ISSUES AND SUMMARY OF ARGUMENT

Costco characterizes the SAC as alleging that its Opioid Dispensing Policy (the "Policy") "effectively refus[es] to fill prescriptions exceeding the dose and duration recommended by the Centers for Disease Control" ("CDC"). (Doc. 76, p. 7.) This summary description does not convey the true import of Plaintiff's allegations. Plaintiff alleges that in 2016, the CDC proposed certain dose (< 90 MME) and duration (3-7 days) thresholds for opioid prescriptions, but those limits were guidelines recommended for clinicians, not pharmacists that was intended to be applied only to acute pain patients *beginning* opioid treatment and specifically did not apply to cancer treatment, palliative care, and end-of-life care. (SAC, ¶43) Nonetheless, Costco, and other pharmacy chains, enacted policies adopting these thresholds as hard and fast limits for the pharmacists in filling prescriptions. Further, they continued these policies even after the American Medical Association ("AMA"), the Pain Management Best Practices Inter-Agency Task Force established by the U.S. Department of Health and Human

3

Services and even the CDC itself publicly stated that pharmacies were applying the CDC Guideline inappropriately and harming patients as a result. (SAC, ¶¶45-53)  The ultimate goal of these policies is not to determine whether an opioid prescription exceeding these limits is valid, but to find a pretext to either not fill such prescriptions or fill them below these limits. (SAC, ¶¶66-68)

Costco also characterizes the SAC as alleging "inadequate treatment for disability" and contends that Plaintiff conflates "treatment and disability." (Doc. 76, pp. 10-1.)  A pharmacist's role is not to provide medical "treatment" for the patient; that is the doctor's role.  The pharmacist is to ascertain that a prescription is valid before filling it and advise of potential harmful interactions with other medication. Plaintiff alleges that Costco's Policy pressures and/or instructs, expressly or implicitly, its pharmacists to not fill opioid prescriptions which exceed the CDC Guideline dose and duration thresholds and/or fill them at lesser amounts, regardless of whether the prescriptions are valid. (*See* SAC, ¶¶66-68)  Indeed, Plaintiff alleges that Costco's Policy, and related training, interferes with its pharmacists' "healthcare judgment" by instructing, coercing and/or incentivizing them to not fill even legitimate opioid prescriptions if they exceed the CDC Guideline dose and duration thresholds.

Plaintiff alleges that Costco's Policy is facially discriminatory because it draws a distinction based on traits more likely to be applicable to disabled persons, i.e., disabled persons are more likely than non-disabled persons to require opioid prescriptions which exceed the CDC Guideline dosage and duration thresholds and/or Costco's Policy treats individuals differently based on criteria closely associated with disabled persons (referred to as "proxy discrimination"). (SAC, ¶126)  It is entirely plausible that conditions requiring opioid prescriptions exceeding the CDC Guideline dose and duration thresholds qualify the persons with those conditions as disabled under the expansive reach of the ADA and/or that the *need* for such prescriptions is a proxy closely associated with being disabled under the expansive reach of the ADA.

4

To be clear, it is not the prescription itself that renders a person disabled under the ADA any more than a wheelchair renders a paralyzed person disabled; it is the disabling condition which creates the need for the prescription just as the paralysis creates the need for a wheelchair. Costco does not present evidence contradicting these allegations, but simply argues that what Plaintiff alleges isn't so. Costco thus makes a factual argument which the Court obviously knows is inappropriate at this stage.

Plaintiff also alleges that she lacks meaningful access to Costco's pharmacy services. In Costco's opinion, Plaintiff's four interactions with Costco pharmacies provide "no support" for this allegation. Once again, Costco's argument depends upon and applies a standard that is simply not applicable at this stage. Plaintiff has adequately alleged she is disabled, an allegation not disputed by Costco, and that Costco has refusal to fill her opioid prescriptions *every time* at the multiple Costco locations where she has attempted to fill them. (SAC, ¶¶109-111) Plaintiff was never told that her prescriptions were invalid. On one occasion, Plaintiff was not given any reason for the refusal. On another, she was told Costco did not sell her medication, which Plaintiff alleges was a pretextual reason. On a third occasion, the denial was purportedly because she did not have her Costco card with her, though her mother, who was present, did have a Costco card. Plaintiff also alleged this reason was pretextual. *Id.*

Plaintiff is entitled to all reasonable inferences from these allegations to be drawn in her favor. She has alleged she is disabled and has valid prescriptions for opioid medication. She has alleged that Costco has an opioid Policy inappropriately incorporating the CDC Guideline dose and duration limits, which her prescriptions exceed. Costco refused to fill her prescriptions either for no reason or pretextual reasons. The fact that it happened on only three or four occasions is legally irrelevant as Plaintiff is not required to undertake a vain and useless act. It is reasonable to infer from these allegations, and the other allegations in the SAC, that Plaintiff has no access, and certainly no meaningful access, to Costco's pharmacy services for her opioid prescriptions. Costco's opportunity to refute these allegations will come

later after adequate discovery.  While Costco may characterize its actions as minor inconveniences or trivial interruptions of Plaintiff's life, the medical treatment of patients with opioids requires a strict regime of dosing on regular schedules without interruptions.  As the CDC has belatedly acknowledged, failing this can cause problems, such as myocardial infarction, death, debilitating withdrawal symptoms, seizures and other very serious maladies.[3]

Plaintiff further alleges that Costco is required to reasonably modify its Policy.  In a single sentence argument, Costco asserts that Plaintiff has not alleged that she requested a modification of its Policy. There is no statutory requirement that Plaintiff make such a request and, as the Court noted in its February 3, 2021 Order, to the extent courts might require such a request, the request need not be written or use any particular language.  (Doc. 61, p. 12 n.1 19.)  Plaintiff has alleged that (i) she complained to Costco's pharmacists and pharmacy managers about the refusal to fill her opioid prescriptions, (ii) Costco is aware of the need to modify its Policy in light of public criticism from the AMA and the CDC of the improper incorporation of the CDC Guideline dose and duration thresholds, and (iii) upon information and belief, numerous other disabled persons and/or their treating physicians have also complained to Costco about its Policy.  (SAC, ¶133)  The allegations are more than sufficient under the applicable standard.

Costco also asserts that Plaintiff has not alleged a reasonable modification of its Policy.  There is "no precise test for what constitutes a reasonable" modification.  *Johnson v. City of Blaine*, 970 F.Supp.2d 893, 911 (D. Minn. 2013), and at the pleading stage, the burden of establishing reasonableness is "not a heavy one."  *National Federation of the Blind v. Lamone*, 813 F.3d 494, 507 (4th Cir. 2016)(quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 280 (2d Cir. 2003), *cert. denied*, 541 U.S. 936 (2004)).  Most cases reflect that Plaintiff need show only that a reasonable modification is "facially

---

[3]     https://www.cdc.gov/media/releases/2019/s0424-advises-misapplication-guideline-prescribing-opioids.html.

6

possible," or suggest the existence of a particular plausible modification.

At present, Plaintiff does not know the details of Costco's Policy and Costco claims the Policy is something different from what has been alleged by Plaintiff, though Costco refuses to divulge the terms of its Policy to the Court. However, the Policy, as alleged by Plaintiff (based on her experience and available information) inappropriately incorporates the CDC Guideline dosage and duration limits and actively works to ensure that opioid prescriptions exceeding those limits are not filled rather than determine if the prescriptions are valid and, further, refuses to inform the patient of the true reasons why his or her prescription is not being filled as written.

Plaintiff has requested that (a) the Costco Policy be revised to not inappropriately use the CDC Guideline dosage and/or duration thresholds as a basis for refusing to fill valid opioid prescriptions as written and (b) to require that patients be informed of the true reason why their opioid prescriptions are not being filled as written. (SAC, ¶¶136, 144) Costco argues that Plaintiff's proposed modifications do not take into account its pharmacists' "duty to prescribe and dispense controlled substances." (Doc. 76, p. 17.) Not only do Costco's pharmacists not have a duty to "prescribe" controlled substances, but they are forbidden from doing so. Indeed, Plaintiff alleges that the incorporation of the CDC Guideline dosage and/or duration thresholds into the Costco Policy interferes with the relationship between patients and their physicians who do have a duty to prescribe controlled substances. (SAC, ¶¶74-76) Further, Plaintiff's proposed modifications do not interfere with the pharmacists' duties. As the AMA and CDC have both announced, the incorporation of the CDC Guideline dosage and duration limits into the Costco's Policy in the manner alleged by Plaintiff is inappropriate, so removing that incorporation creates no problem (and, indeed, corrects an existing problem).

7

# IV.

## STANDARD OF REVIEW

Unlike Walgreens, Costco at least formulaically recites the proper standard of review for a Rule 12(b) motion to dismiss. However, like Walgreens, Costco's arguments are based largely on evidentiary and proof issues and seek to deny Plaintiff the opportunity to gather evidence in support of her allegations through discovery and present it to the Court so her claims can be decided on a complete record.

Federal Rule of Civil Procedure 8 only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5B Wright & Miller, *Federal Practice & Procedure* §1356, at 354 (3d ed. 2004). In considering Costco's motions to dismiss, the Court must accept all of Plaintiff's well-pleaded facts as true, analyze those facts in the light most favorable to her and draw all reasonable inferences in her favor. *Doe v. CVS Pharmacy, Inc.*, 982 F,3d 1204 (9th Cir. 2020); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Plaintiff is not required to allege, much less prove, a prima facie case of discrimination at this stage of the proceedings. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, (2002).[4] Detailed factual allegations are not required; the facts alleged need only be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 555 & 570 (2007). "To cross the plausibility threshold a claim does not need to be probable" – it need only give rise to more than a mere possibility of liability. *See Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44–5 (1st Cir. 2012). "A well-pleaded

---

[4] Although *Swierkiewicz* was decided before *Iqbal* and *Twombly*, it remains the law that a plaintiff is not required to plead a prima facie case of discrimination to survive a motion to dismiss. *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1050 n. 2 (9th Cir. 2012); *Prouty v. Berryhill*, 2019 WL 8164378 *3 (C.D. Cal. 2019).

8

complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

Plaintiff's SAC easily satisfies this standard.

**V.**

**PLAINTIFF HAS ALLEGED THAT COSTCO'S
POLICY DISCRIMINATES ON THE BASIS OF DISABILITY**

    A.    The Costco Opioid Dispensing Policy

Without describing the details of the Policy alleged in the SAC, Costco asserts, without any evidence, that it "has no such policy." (Doc. 76, p. 7.) Costco does not deny having an Opioid Dispensing Policy but offers no proof of its terms. The Costco Policy as alleged in the SAC, which therefore must be accepted as true, is that:

1. After the issuance of the 2016 CDC Guideline, Costco amended its Policy to incorporate the Guideline's 50-90 MME dosage and 3-7 day duration thresholds.

2. The Policy, and related Practices, Procedures and Training, pressures and/or instructs, expressly or implicitly, Costco's pharmacists to *not* fill prescriptions exceeding the CDC Guideline's dosage and duration thresholds and/or fill them below those thresholds, even if they are legitimate prescriptions.

3. The Policy, and related Practices, Procedures and Training, actively discourages and burdens the process of filling valid prescriptions exceeding the CDC Guideline dosage or duration thresholds.

4. Costco's pharmacists are not required to explain to the patients the true reason why their valid prescriptions are not being filled or not being filled as written. Instead, they typically provide no explanation, offer a pretextual explanation, such as being out of stock, or seek to delay any action hoping the patient will go away on his or her own.

5. In addition, Costco has inadequately trained its pharmacists with regard to its Policy, resulting in inconsistent application of the Policy, patients presenting valid opioid prescriptions being treated as criminals, drug seekers and addicts and its pharmacists either refusing to tell patients why their valid prescriptions were not being filled as written or providing pretextual reasons for the refusal to fill.

(SAC, ¶¶64-69)

9

B.    The Policy Discriminates on the Basis of Disability

Costco asserts that the SAC fails to plausibly allege that Costco's Policy "only applies" to "persons reasonably considered 'disabled' under federal law." (Doc. 76, p. 11.) As a threshold matter, Plaintiff is not required to allege that Costco's Policy applies "only" to disabled persons to allege a claim for disability discrimination. The question of whether Costco's Policy also applies to non-disabled persons goes to Costco's defense that its Policy is "facially neutral." As discussed below, the Policy is not facially neutral. Even if it were, Plaintiff can allege discrimination based on disparate impact or Costco's failure to reasonably modify its Policy, a fact which Costco appears to recognize in its motion. Plaintiff has alleged all of these bases for her disability claim in additional to alleging disparate treatment. (SAC, ¶¶126-134)

i.    The Costco Policy is Not Facially Neutral

As noted, Costco asserts that its Policy, as alleged by Plaintiff, applies to non-disabled persons as well as disabled persons, making it facially neutral. But, Plaintiff alleges that the Costco Policy is not facially neutral for two reasons: (1) all persons covered by the Policy are plausibly considered disabled under the ADA's expansive reach and (2) Costco Policy is a form of proxy discrimination. (SAC, ¶126)

1.    All Persons Covered by the Costco Policy are Plausibly Disabled

To determine the "plausibility" of Plaintiff's allegations that all persons covered by the Costco Policy are disabled, those allegations must be viewed in the context of the meaning of "disabled" under the ADA.[5] As previously briefed to the Court[6], "disability" under the ADA is an extremely broad and easy to meet classification. The ADA Amendments Act of 2008 ("ADAAA") proclaimed that: "The

---

[5]    A person who is "disabled" under the ADA is also considered disabled under the RA, the ACA and the Unruh Act. *See Coons v. Secretary of U.S. Dept. Of Treasury,* 383 F.3d 879, 884 (9th Cir. 2004); *Doe v. CVS Pharmacy, Inc.,* 982 F. 3d 1204 (9th Cir. 2020), *pet. for cert. filed.*

[6]    In the interest of brevity, and because it does not appear to be a contested issue, Plaintiff would refer the Court to and adopt her prior briefing rather than restate all of the law previously cited to the Court regarding disability under the ADA.

10

definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. §12102(4)(A). *See also Wirey v. Richland Community College*, 913 F.Supp.2d 633 (C.D. Ill. 2012) ("Notably, the ADA was amended in 2008 to make the standard for qualifying as disabled more inclusive"). Congress made clear that establishing a disability under the ADA would "not demand extensive analysis." ADAAA §2(b)(5), 122 Stat. at 3554. Further, impairments that are episodic, in remission or last less than six months can also be substantially limiting and qualify as disabilities. 42 U.S.C. §12102(4)(D).

As alleged by Plaintiff, the Costco Policy applies to people with prescriptions exceeding the CDC Guideline dose and/or duration limits. A reasonable inference drawn from the SAC is that people who are given such opioid prescriptions have an underlying condition or conditions that qualifies them as disabled under the ADA. Indeed, Walgreens in its motion concedes that it is reasonable to infer that a "vast number" of people whose opioid prescriptions exceed only the duration threshold are disabled. (Doc. 74, p.4.) Costco misconstrues Plaintiff's position as being that "the disability is having a prescription exceeding the CDC recommendation." (Doc. 76, p. 9.) To be clear, it is not the prescription itself that renders a person disabled under the ADA any more than a wheelchair renders a paralyzed person disabled; it is the disabling condition which creates the need for the prescription just as the paralysis creates the need for a wheelchair. Plaintiff contends that prescriptions exceeding the CDC Guideline dose and duration limits are *evidence* of persons with a medical condition or conditions who qualify as disabled under the ADA, not that the prescription itself is a disability. Thus, Costco is arguing over the plausibility of Plaintiff proving this claim, which is not the correct standard for a motion to dismiss.

Costco contends that "Plaintiff cannot deny that many chronic pain patients, even those prescribed opioid medication at higher dosage or duration levels, are not disabled under federal law," citing the Court's statement in its February 3, 2021 Order that "National estimates of high impact chronic pain can

11

help differentiate persons with limitations in major life activities . . . from those who maintain normal life activities despite chronic pain." (Doc. 76, p. 12, Order, Doc. 61, p. 10.)  Again, this is an argument over what the evidence ultimately might or might not prove.  Further, the study quoted in the Court's Order had nothing to do with opioid prescriptions, making it inapplicable to Costco's point.  Indeed, there is no reason to believe that people "who maintain normal life activities despite chronic pain" are given prescriptions for opioids exceeding the CDC Guideline dose and duration thresholds.

Costco also asserts: "Nor can Plaintiff deny many persons prescribed such opioid medication do not suffer from a disabling medical condition," citing the statement in the Court's February 3, 2021 Order that "Plaintiff's alternative assertion, that all individuals who seek to fill an opioid prescription . . . are 'disabled' under federal law, is incorrect as a matter of law."  (Doc. 76, p. 12, Order, Doc. 61, p. 11.) Plaintiff can, and does, deny Costco's assertion, but, again, this is an argument over what the evidence ultimately might or might not prove.  Further, the Court's statement quoted by Costco is inapplicable to the SAC.  That statement was made in connection with the discussion of acute pain patients.  Acute pain patients are not prescribed opioids in excess of the CDC Guideline dose and duration thresholds.  Indeed, as Plaintiff alleges, the CDC Guideline was intended for acute pain patients.

Similarly, Costco argues that Plaintiff cannot rely on "chronic pain to create a disability," citing *Hale v. King*, 642 F. 3d 492 (5th Cir. 2011) and *Bain v. Transcor Am., LLC*, 2009 WL 562586 (M.D. Tenn. 2009).  (Doc. 76, p. 12.)  Neither case applied the expanded definition of "disability" under the ADAAA, and, in any event, it is not clear that the plaintiff in *either case* required opioid medication in excess of the CDC Guideline dose and duration thresholds.  More importantly, Plaintiff does not contend chronic pain creates a disability.  It is the underlying condition which renders a person disabled.  The need for a prescription exceeding the CDC Guideline dose and duration limits evidences the existence of such conditions.

2.    The Costco Policy is a Form of Proxy Discrimination

Even accepting Costco's argument that not all persons with opioid prescriptions exceeding the CDC Guideline's dose and duration thresholds are disabled, dismissal of the SAC is not the inevitable result. "Proxy discrimination is a form of facial discrimination. It arises when the defendant enacts a law or policy that treats individuals differently on the basis of seemingly neutral criteria that are so closely associated with the disfavored group that discrimination on the basis of such criteria is, constructively, facial discrimination against the disfavored group." *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n. 23  (9th Cir. 2013), *cert. denied*, 574 U.S. 974 (2014).[7]

The "fit" between the expansive standard for disability under the ADA and opioid prescriptions exceeding the CDC Guideline dosage and/or duration limits, as alleged, is plausibly "sufficiently close" to allege proxy discrimination.  As noted, even Walgreens concedes in its motion that it is a reasonable inference to conclude that a "vast number" of people with opioid prescriptions lasting more than 7 days are disabled under the ADA.  (Doc. 74, p. 4.)  Accordingly, under the applicable standard of review, Plaintiff has sufficiently alleged a claim for disability discrimination.

C.    The Costco Policy Results in Disparate Treatment

---

[7]  It is not necessary that the Costco Policy discriminate based on traits associated only with disabled persons.

> The difference between proxy discrimination and facially neutral overdiscrimination is merely one of degree.  In a case of proxy discrimination the defendant discriminates against individuals on the basis of criteria that are almost exclusively indicators of membership in the disfavored group.  By contrast, facially neutral overdiscrimination arises when the defendant exhibits a willingness to distinguish amongst individuals on the basis of facially neutral criteria, knowing (but accepting) that some individuals who are not members of the disfavored group will suffer alongside the targeted individuals.

*Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 n. 23  (9th Cir. 2013), *cert. denied*, 574 U.S. 974 (2014).

13

Plaintiff alleges disparate treatment under the Costco Policy. (SAC, ¶128)    As Costco acknowledges, the test for disparate treatment is deliberate indifference, which is the failure to act on knowledge that a harm to a federally protected right is substantially likely. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138-39 (9th Cir. 2001). Costco contends the SAC fails to allege facts to support deliberate indifference. (Doc. 76, p. 14.) This contention is clearly not true. Plaintiff alleges:

> The test for disparate treatment is deliberate indifference, which requires knowledge that a harm to a federally protected right is substantially likely and a failure to act upon that the likelihood. When Walgreens and Costco adopted the dosage and duration limits from the CDC Guideline as part of their respective Opioid Dispensing Policies, they knew that the Guideline was directed to clinicians and not pharmacists, that it was never intended for the purpose for which they were using it, that it was only a recommendation and that the dosage and duration limits were meant for acute pain and people just starting opioid medication. Walgreens and Costco knew that applying these limits to persons presenting valid opioid prescriptions exceeding those limits and who were not starting opioid medication was an inappropriate application of the CDC Guideline and that it was substantially likely to impact disabled persons seeking to have those valid prescriptions filled. Nonetheless, even after public complaints by the AMA, the CDC's own warning that its Guideline should not be misapplied and complaints from their respective customers, neither Walgreens nor Costco took any action to prevent their misapplication of the Guideline to disabled persons.

(SAC, ¶128)  IN short, the SAC alleges Costco (and Walgreens) knew from public pronouncements that the incorporation of the CDC Guideline dose and duration limits into its Policy was inappropriate and causing harm to patients yet did so anyway.   These allegations sufficiently to allege deliberate indifference by Costco.

D.    Plaintiff Lacks Meaningful Access under the Costco Policy

Costco also arges that Plaintiff has not sufficiently alleged lack of meaningful access to its pharmacies because, in Costco's opinion, the four interactions Plaintiff alleges with Costco pharmacists provide "no support" for her claim. (Doc. 76, p. 15.) Once again, Costco's argument depends upon and applies a standard that is simply not applicable at this stage. Plaintiff has adequately alleged she is disabled (an allegation not disputed by Costco) and that Costco has refusal to fill her opioid prescriptions *every time* at the multiple Costco locations where she has attempted to fill them. (SAC, ¶¶109-111)  Plaintiff

14

was never told that her prescriptions were invalid.  On one occasion, Plaintiff was not given any reason for the refusal.  On another, she was told Costco did not sell her medication, which Plaintiff alleges was a pretextual reason.  On a third occasion, the denial was purportedly because she did not have her Costco card with her, though her mother, who was present, did have a Costco card.  Plaintiff also alleged this reason was pretextual.  *Id.*

Plaintiff is entitled to all reasonable inferences from these allegations drawn in her favor.  She has alleged she is disabled and has valid prescriptions for opioid medication.  She has alleged that Costco has an opioid Policy inappropriately incorporating the CDC Guideline dose and durations limits, which her prescriptions exceeded.  Costco refused to fill her prescriptions either for no reason or pretextual reasons. The fact that it happened on only three or four occasions is legally irrelevant as Plaintiff is not required to undertake a vain and useless act.  It is reasonable to infer from these allegations, and the other allegations in the SAC, that Plaintiff has no access, and certainly no meaningful access, to Costco's pharmacy services for her opioid prescriptions.  Costco's opportunity to refute these allegations will come later after adequate discovery.

Costco also throws out a smattering of statements purporting to be arguments that Plaintiff has not sufficiently alleged lack of meaningful access.  Costco claims Plaintiff has not alleged that she and the putative class are "disproportionately impacted" by the Costco Policy.  (Doc. 76, p. 15.)  There is no set standard to establish whether an impact is "disproportional," but Plaintiff has alleged:

> In 2018, for example, there were 168,158,611 opioid prescriptions issued in the United States.  Of these, 59,492,722, or 35.37%, were for more than 7 days.  Additionally, 25,769,022 prescriptions, or 15.32%, were for dosages exceeding 50 MME and 12,597,565, or 7.5%, exceeded 90 MME.  In 2018, Walgreens had a market share of prescription drug revenue of 17.5% and Costco had a market share of 0.6%.  Thus, a substantial number of prescriptions written in 2018 were/would have been subjected to the dosage and/or duration limits in the Walgreens and Costco Policies and those prescriptions were written for people who disproportionately qualify as disabled within the meaning of the ADA.

(SAC, ¶129)

15

These statistics show that a significant number of people receive prescriptions for opioids exceeding the CDC Guideline dose and duration thresholds and are affected by the Costco Policy. Even if not all of the people with such prescriptions are considered disabled under the ADA, it is a reasonable inference that a "vast number" of them are disabled (as Walgreens even agrees). Accordingly, Plaintiff has sufficiently alleged a "disproportionate" impact. [8]

Costco additionally attributes to Plaintiff an "implicit claim that she requires additional protections to equalize her access to opioid medication." (Doc. 76, p. 16.) Plaintiff does not know what Costco means by this assertion, but she is making no such claim. Plaintiff is simply asking that Costco cease using the CDC Guideline dose and duration limits inappropriately as a means to avoid filling her legitimate opioid prescriptions.[9]

E.   Plaintiff has Adequately Alleged A Necessary
     and Reasonable Modification to Costco's Policy

     i.   Request for Reasonable Modification of Costco's Policy

Costco argues that Plaintiff has not alleged that she requested a reasonable modification of its Policy. As an initial matter, Title III of the ADA does not require that a modification be requested by Plaintiff. *Aguirre v. California School of Court Reporting (CSCR)—Riverside*, 2016 WL 7635957 *3

---

[8]   Costco (and Walgreens in its motion) points out that ¶129 of the SAC incorrectly states the number of opioid prescriptions exceeding 7 days that were issued in the United States in 2018. (Doc. 76, pp. 13, n. 2.) The correct number is 108,665,889. The mistake was due to a transcription error following mathematical calculations. However, the point of the statistic is to demonstrate the significant disparate impact caused by the Costco (and Walgreens) Policy. Costco's correction merely confirms that point. The SAC also inadvertently cites to the 2018 CDC Report for these statistics rather than the 2019 Report, which can be found at https://www.cdc.gov/drugoverdose/pdf/pubs/2019-cdc-drug-surveillance-report.pdf.

[9]   Costco quotes a portion of one sentence from SAC ¶130 and claims it is a series of hypotheticals "unsupported by any specific factual allegations against Costco." (Doc. 76, p. 16 n. 6.) The supposed "hypotheticals" are factual allegations, which Plaintiff is entitled to have accepted as true, and, further, factual support for these "hypotheticals" is contained throughout the SAC, in particular at ¶¶109-130.

16

(C.D. Ca. 2016)("Nothing in the text of Title III requires a disabled individual to request an accommodation before bringing suit"); *Tauscher v. Phoenix Board of Realtors, Inc.*, 931 F. 3d 959, 964-5 (9th Cir. 2019).  While some courts have held or implied that a request for a reasonable modification must be given, they universally agree that the request does not have to be in writing and does not have to use any particular language or even reference the ADA.  Courts have also held that that no request is necessary when the defendant is aware of a disability requiring accommodation.[10]  A disabled person, such as the Plaintiff, presenting a valid prescription for opioids to a sophisticated pharmacy such as Costco, with supposedly trained and licensed pharmacies, should not need to request a modification of the pharmacy's policies to simply dispense the drugs he or she needs.

As Costco acknowledges, Plaintiff alleged that she spoke to pharmacists at Costco about their refusal to fill her prescription and even pleaded with a pharmacy manger about filling her opioid prescription.  (SAC, ¶¶109-113)  In addition, she has alleged:

> Walgreens and Costco are each aware of the need to modify their respective Opioid Dispensing Policies, and their practices and procedures implementing those policies.  The language of the CDC Guideline makes it obvious that the Guideline was not intended to be used as adopted by Walgreens and Costco.  Even if not obvious, the Guideline has been publicly criticized by organizations such as the AMA and the CDC itself publicly warned against misapplication of its Guideline.  In addition, Plaintiff has specifically complained to Walgreens' corporate headquarters, to Walgreens pharmacy managers and to Costco pharmacy managers about their respective Opioid Dispensing Policies, Practices and Procedures.  Upon information and belief, numerous other disabled persons and/or their treating physicians have also complained to Walgreens and Costco about their respective Opioid Dispensing Policies, Practices and Procedures and requested reasonable modification of the same.  In the alternative, requesting reasonable modification would be futile.

---

[10]     *See, e.g.*, *Zivkovic v. S. Cal. Edison Co.,*302 F.3d 1080, 1089 (9th Cir.2002); *E.E.O.C. v. C.R. England, Inc.*, 644 F. 3d 1028, 1049 (10th Cir. 2011); *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 n. 5 (9th Cir. 2000), *vacated on other grounds*, 535 U.S. 391 (2002); *Taylor v. Phoenixville Sch. Dist.*, 184 F. 3d 296, 313 (3d Cir.1999); *Kiman v. New Hampshire Dep't of Corr.*, 451 F.3d 274, 283 (1st Cir. 2006); *Taylor v. Phoenixville School District, supra*; *Coneen v. MBNA America Bank, N.A.*, 334 F.3d 318, 332 (3d. Cir. 2003); *McKissick v. County of York*, 2010 WL 1930132 *6 (M.D. Pa. 2010); *Schmidt v. Safeway Inc.*, 864 F. Supp. 991, 997 (D. Or. 1994).17

(SAC, ¶133)  Assuming a legal requirement to request a reasonable modification, these allegations are sufficient to satisfy any such requirement.

ii.     The Requested Modifications are Necessary

Costco contends that Plaintiff's requested modifications are not necessary because she has a "like experience" as "any person with an opioid prescription that exceeds the 'dose and duration' thresholds." (Doc. 76, p. 17.)  But, the point of Plaintiff's Complaint is that she and other persons with opioid prescriptions exceeding the CDC Guideline dose and duration thresholds do not have the same experience or access to Costco's pharmacy services as people who don't have opioid prescriptions or who have opioid prescription that do not exceed the CDC Guideline dose and duration thresholds.  (See SAC, ¶130)

Costco's "like experience" argument is a rehash of its meaningful access argument.  As previously addressed, Plaintiff lacks meaningful access to Costco's pharmacy services and her experience is far different than that of customers - disabled and non-disabled - whose opioid prescriptions do not exceed the CDC Guideline dosage or duration limits or whose prescriptions are for non-opioids.

Plaintiff would further point out that the Costco Policy's inappropriate use of the CDC Guideline dosage and duration limits acts as de facto eligibility criteria that screen out or tend to screen out disabled persons from fully and equally enjoying access to Costco's pharmacy services.  As alleged in the SAC, the Department of Justice published a Technical Assistance Manual which provides several illustrations, two of which are particularly apt to Plaintiff's allegations:

ILLUSTRATION 1:  A restaurant has an unofficial policy of seating individuals with visible disabilities in the least desirable parts of the restaurant.  This policy violates the ADA because it establishes an eligibility criterion that discriminates against individuals with certain disabilities and that is not necessary for the operation of the restaurant.  The restaurant may not justify its policy on the basis of the preferences of its other customers.

ILLUSTRATION 2:  A parking garage refuses to allow vans to park inside even though the garage has adequate roof clearance and space for vans.  Although the garage operator does not intend to discriminate against individuals with disabilities, the garage's policy unnecessarily

18

tends to screen out people with certain mobility impairments who, in order to have enough space for mobility aids such as wheelchairs, use vans rather than cars.[11]

(SAC, ¶131)

The illustration policies are much more benign than the Costco Policy alleged by Plaintiff and yet the DOJ considers reasonable modifications necessary for those hypothetical policies. Similarly, the SAC more than sufficiently alleges that the modifications requested by Plaintiff are necessary.

iii.    The Requested Modifications are Reasonable

Reasonable modification or accommodation claims recognize that "equal treatment may not beget equality, and facially neutral policies may be, in fact, discriminatory if their effect is to keep persons with disabilities from enjoying the benefits of services that, by law, must be available to them." *Presta v. Peninsula Corridor Joint Powers Bd.,* 16 F.Supp.2d 1134, 1136 (N.D. Ca. 1998). *See also Dunlap v. Ass'n of Bay Area Gov'ts,* 996 F. Supp. 962, 965 (N.D. Ca. 1998) ("[T]he ADA . . . creates an affirmative duty in some circumstances to provide special, preferred treatment, or 'reasonable accommodation'").

There is "no precise test for what constitutes a reasonable accommodation." *Johnson v. City of Blaine,* 970 F.Supp.2d 893, 911 (D. Minn. 2013). Plaintiff need only show that a reasonable accommodation is "facially possible," *see Pickens v. Astrue*, 252 Fed. Appx. 795, 796 (9th Cir. 2007); *Fjellestad v. Pizza Hut of Am., Inc.,* 188 F.3d 944, 950 (8th Cir. 1999), or "suggest the existence of a particular plausible accommodation." *Stone v. City of Mount Vernon,* 118 F.3d 92, 98 (2d Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

Costco contends that Plaintiff's requested modification of its Policy is too vague to be workable. (Doc. 76, p. 17.) But, the modifications sought are quite specific and adequate for this stage of the

---

[11]    https://www.ada.gov/taman3.html, III-4.1100.

proceedings.  At present, Plaintiff does not know the details of Costco's Policy and Costco refuses to disclose those details while also contending its Policy is something different than what has been alleged by Plaintiff.  The Policy alleged by Plaintiff (based on her experience and available information) inappropriately incorporates the CDC Guideline dosage and duration limits and actively works to *not* fill opioid prescriptions exceeding those limits rather than determine if the prescriptions are valid, all without informing the patient of the true reasons why his or her prescription is not being filled as written.  Plaintiff has requested that (a) the Costco Policy be revised to not inappropriately use the CDC Guideline dosage and/or duration limits as a basis for refusing to fill valid opioid prescriptions as written and (b) to require that patients be informed of the true reason why their opioid prescriptions are not being filled as written. (SAC, ¶¶136, 144)

Costco creates a strawman argument, claiming that Plaintiff's requested modifications could result in its liability for "overprescribing" or failing to maintain adequate controls and that Plaintiff fails to "take into account a pharmacist's duty to properly prescribe and dispense controlled substances." (Doc. 76, p. 17.)  As an initial matter, pharmacists have no "duty to prescribe" and, indeed, would be guilty of practicing medicine without a license if they were to prescribe, as opposed to dispense, controlled substances. *See* 21 C.F.R. § 1306.04(a)("The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner").  Nor do Plaintiff's requested modifications result in a failure to maintain adequate controls for dispensing opioids.  Plaintiff's requested modifications seek to (i) remove the inappropriate use of the CDC Guideline for a purpose for which it was never intended, i.e., as a means to *not* fill valid prescriptions and (ii) to provide information to customers as to why the pharmacist is refusing to fill those prescriptions which are refused.  As the AMA and CDC have both publicly announced, the incorporation of the CDC Guideline dosage and duration limits into the

Costco Policy in the manner alleged by Plaintiff is inappropriate, so removing that incorporation creates no problem (and, indeed, corrects an existing problem).[12]

Costco's argument is also premature.   At the pleading stage, the burden of establishing reasonableness is "not a heavy one." *National Federation of the Blind v. Lamone*, 813 F.3d 494, 507 (4th Cir. 2016).   The modifications requested by Plaintiff are certainly "facially possible" and there is nothing unreasonable about them.   In fact, the modifications effectively require Costco to go back to its Policy before it adopted the 2016 CDC Guideline, which, as Plaintiff alleges, was never intended for the purpose for which it is being used by Costco.   After an adequate opportunity for discovery, Plaintiff's requested modifications may be revised.

## VI.

## PLAINTIFF'S CLAIMS DO NOT SEEK RELIEF FOR THE "INADEQUATE TREATMENT OF A DISABILITY" BY PHARMACISTS

Costco mischaracterizes the SAC as alleging "nothing more than inadequate medical treatment." (Doc. 76, p. 11.)   The most obvious problem with Costco's characterization is that pharmacists do not provide "medical" treatment; their role in filling prescriptions is to determine that the prescription is valid and to advise of potentially dangerous interactions with other medications.   Even disregarding this misstatement of the pharmacist's role, Costco's mischaracterization deliberately seeks to obscures and blur the nature of the allegations in the SAC.   As discussed previously, Plaintiff alleges that Costco's

---

[12]     Costco also cites to footnote 14 in the Court's February 3, 2021 Order in which the Court accused Plaintiff of not considering how her requested modifications could "change the nature of pharmacists' work and disrupt Defendants' business." (Doc. 76, p. 17; Doc. 61, p. 20 n. 14.)   In the first instance, the modifications requested by Plaintiff do no such thing.   However, more importantly, it is an inapplicable consideration at this stage of the proceedings.   Costco bears the burden of proving a fundamental alteration. 42 U.S.C. § 12182(b)(2)(A)(ii).   *See also Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F. *3d 1052, 1059 (5th Cir. 1997); Pahlavan v. Drexel University College of Medicine*, 438 F.Supp.3d 404, 421 (E.D. Pa. 2020). Also, the *Baughman* and *Johnson* cases cited by the Court were decided on summary judgment, not motions to dismiss.

Policy pressures and/or instructs, expressly or implicitly, its pharmacists to *not* fill opioid prescriptions which exceed the CDC Guideline dose and duration thresholds and/or fill them at lesser amounts, regardless of whether the prescriptions are valid.  (*See* SAC, ¶¶56, 57)  Indeed, Plaintiff alleges that Costco's Policy, and related training, interferes with its pharmacists' "professional judgment" by instructing, coercing and/or incentivizing them to not fill even legitimate opioid prescriptions which exceed the CDC Guideline dose and duration thresholds.

This "inadequate treatment of disability" argument arises out of Costco's "wishful thinking" construction of the SAC.  The Court, however, is required to read the actual allegations in the SAC, accept them as true, construe them in the light most favorable to Plaintiff and draw all reasonable inferences in her favor.  Even a straight-forward reading of the SAC makes it clear that Plaintiff is not trying to pursue a professional malpractice claim against Costco through federal and state discrimination statutes.[13]

## VII.

### PLAINTIFF'S CALIFORNIA STATE LAW CLAIMS MAY NOT BE DISMISSED

Costco seeks dismissal of Plaintiff's claims under the Unruh Act on the basis that her federal claims must be dismissed.  (Doc. 36, pp. 8-10)  For the reasons given herein, Plaintiff's federal claims should not be dismissed; therefore, the California Unruh Act claim also survives.  Costco also contends that a claim

---

[13]    Costco cites some cases for the proposition that federal anti-discrimination statutes are not intended to remedy medical malpractice.  Plaintiff is not alleging a claim for medical practice.  Further, Costco is not immune to a discrimination claim simply because medical or professional treatment may be involved.  A medical treatment decision can be challenged under anti-discrimination statutes when: "(1) the treatment decision was so unreasonable as to be arbitrary and capricious, raising an implication of pretext for some discriminatory motive, and (2) if not pretextual, the treatment decision was based on stereotypes of the disabled rather than an individualized inquiry as to the plaintiff's condition." *Buchanan v. Maine*, 469 F.3d 158, 176 (1st Cir. 2006); *Kiman v. New Hampshire Department of Corrections*, 451 F. 3d 274, 284-5 (1st Cir. 2006). *See also Smith v. Aroostook County*, 376 F.Supp.3d 146, 159 (D. Me.), *aff'd*, 922 F. 3d 41 (1st Cir. 2019) (discussing the distinction drawn between "ADA claims based on negligent medical care from those based on discriminatory medical care")

22

under the Unruh Act, even one based on the ADA, requires proof of intentional discrimination. This is an incorrect statement of the law. In *Munson v. Del Taco, Inc.*, 208 P.3d 623 (Ca. 2009), the California Supreme Court held that a plaintiff seeking damages for ADA violations under the Unruh Act is not required to prove intentional discrimination. Further, Plaintiff has alleged intentional discrimination. (*See* SAC, ¶¶113, 128)

## VIII.

## <u>CONCLUSION</u>

For the reasons given herein, Costco's Motion to Dismiss should be denied in its entirety. The law provides that disability discrimination can be established by disparate treatment, disparate impact or failure to provide a reasonable modification. *Nunes v. Massachusetts Dept. of Correction*, 766 F.3d 136, 144 (1st Cir. 2014); *Tsombanidis v. West Haven Fire Dept.*, 352 F.3d 565, 573 (2d Cir. 2003). A Rule 12(b) motion to dismiss for failure to state a claim for relief is granted only if it is "clear that no relief can be granted under any set of facts that could be proved consistent with the allegations."' *Ledford v. Sullivan*, 105 F. 3d 354, 356 (7th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). Thus, if the SAC sufficiently alleges a claim for disability discrimination under any available ground – which it does – then Costco's Motion to Dismiss must be dismissed *in toto* and not granted in part.

In the alternative, should the Court determine that any portion of Costco's Motion should be granted, Plaintiff respectfully requests leave to replead and also prays for all other relief to which she is justly entitled.

Respectfully Submitted,

/s/ Thomas D. Haklar

Thomas D. Haklar, CA Bar No. 169039
Peggy J. Reali (Of Counsel) SBN 153102
**LAW OFFICE OF THOMAS D. HAKLAR**
320 Encinitas Blvd., Suite A
Encinitas, CA 92024

23

Tel.: (858) 481-5454
Fax: (858) 720-9797
thaklar@haklarlaw.com

Scott D. Hirsch (*pro hac vice*)
SCOTT HIRSCH LAW GROUP
7301 W Palmetto Park Rd #207A
Boca Raton, FL 33433
Telephone:  (561) 569-7062
(scott@scotthirschlawgroup.com)

Joseph A. Bruno (*pro hac vice*)
BRUNO & BRUNO
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile:  (504) 581-1493
(jbruno@brunobrunolaw.com)

Robert Redfearn (*pro hac vice*)
Robert L. Redfearn, Jr. (*pro hac vice*)
30th Floor, Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-3000
Telephone:  (504) 569-2030
Facsimile:  (504) 569-2999
(Robertr@SPSR-law.com)
(Robertjr@SPSR-law.com)

Mark Kepple (*pro hac vice*)
1219 Chapline Street
Wheeling, W. Va.  26003
Telephone: (304) 233-3100
Facsimile:  (304) 343-3133
(mkepple@baileywyant.com)

Theodore Huge (*pro hac vice*)
HARRIS & HUGE, LLC
180 Spring Street
Charleston, SC 29403
Telephone:  (843) 805-8031
Facsimile:  (843) 636-3375
(ted@harrisandhuge.com)

Attorneys for Plaintiff Susan Smith and all those
similarly situated.

24