IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SUSAN SMITH,

    Plaintiff,

v.

WALGREENS BOOTS ALLIANCE, INC., et al.,

    Defendants.

Case No. 20-cv-05451-CRB

**ORDER GRANTING MOTIONS TO DISMISS**

Plaintiff Susan Smith filed a putative class action alleging that Defendants Costco and Walgreens implemented opioid prescription fulfillment policies that discriminate against disabled persons. The Court dismissed the First Amended Complaint ("FAC") without prejudice. Order re FAC ("Order") (dkt. 61). Plaintiff has now filed a Second Amended Complaint. Second Amended Complaint ("SAC") (dkt. 71). Defendants have moved to dismiss the SAC. Walgreens MTD SAC (dkt. 74); Costco MTD SAC (dkt. 76). After careful review of the parties' briefs, the Court concludes that there is no need for oral argument. For the reasons explained below, the Court GRANTS Defendants' motions to dismiss without prejudice.

I.    **BACKGROUND**

    A.    **FAC Allegations**

Plaintiff Susan Smith brought the FAC on behalf of a putative class of chronic pain patients, persons in palliative or nursing home care, and individuals suffering from sickle cell anemia or undergoing cancer treatment. FAC (dkt. 13) ¶ 16; Order at 1–2. Plaintiff alleged that Walgreens Boots Alliance, Inc. ("WBA"), WAGDCO, LLC ("WAGDCO"

and together with WBA, "Walgreens"), Costco Wholesale Corporation ("Costco"), and Does 1-10 ("Does") (collectively, "Defendants") maintained prescription drug policies that discriminated against the class on the basis of disability in violation of federal and California law.  Order at 1–2.

Plaintiff's allegations are set against the backdrop of the ongoing opioid and chronic pain epidemics.  Id.  In connection with the opioid epidemic, manufacturers, distributers, and dispensers in the opioid supply chain, including Defendants, are facing litigation alleging that they violated state and federal laws and that, as a result, excessive numbers of opioid pills entered the market, contributing to the opioid crisis.[1]  Id.  At the same time, medical professionals have increasingly recognized that many Americans live with chronic pain that reduces their quality of life and that, in certain instances, has been undertreated, resulting in avoidable suffering and a chronic pain epidemic.  Id.

Against this backdrop, Plaintiff alleged that Defendants' pharmacies improperly adopted Center for Disease Control ("CDC") and American Medical Association ("AMA") public health guidelines that were directed toward clinicians and physicians, not pharmacists.  Id. at 4–5.  Defendants allegedly adopted these guidelines—which in effect burden or prevent patients from filling opioid prescriptions at Defendants' pharmacies—to protect themselves from additional opioid-related lawsuits.  See id. at 1–2.

Plaintiff alleged that Costco and Walgreens implemented distinct policies based on the public health guidelines.  Costco allegedly adopted a blanket policy that prohibited the fulfillment of opioid prescriptions.  Id. at 5.  Walgreens, on the other hand, allegedly adopted a more multi-faceted policy that involved (i) "blacklisting" certain persons with opioid prescriptions, (ii) imposing "dose and duration" limits, (iii) requiring bundling with non-opioid medications, and (iv) requiring "comprehensive medical records."  Id.

Plaintiff, who is disabled within the meaning of federal law, alleged that these policies discriminated against disabled persons by preventing them from filling medically

---

[1] See e.g. City and County of San Francisco, et al. v. Purdue Pharma L.P., et al., No. 3:18-cv-07591-CRB.

2

necessary opioid prescriptions at Defendants' pharmacies. Id. at 3.  Plaintiff sought to represent a putative class of persons injured by the policies. Id. at 4–5.

Defendants moved to dismiss the FAC on the ground that Plaintiff failed to state a claim on which relief could be granted.[2]

### B.     Order Dismissing FAC

The Court granted Defendants' motions to dismiss the FAC, holding that Plaintiff failed to state a claim for disability discrimination under federal or state law.  As an initial matter, the Court held that Plaintiff failed to establish that alleged polices apply solely or disproportionately to disabled persons. Id. at 13.  In this regard, Plaintiff argued that Defendants' alleged policies apply to persons with chronic or acute pain and that such persons are disabled within the meaning of federal law. Id. at 8–13.  The Court rejected these arguments because Plaintiff failed to plausibly allege that persons with chronic or acute pain are exclusively or overwhelmingly disabled. Id.  Accordingly, the Court held that "the class consists of disabled and nondisabled persons at best, and Defendants' policies apply to both non-disabled persons and the putative class alike." Id. 13.

#### 1.     Costco

Plaintiff alleged that Costco violated federal and state discrimination laws because it implemented a policy that "operates as a total ban on opioid sales, which discriminates against Plaintiff and members of the putative class." Id. at 13.  Because it found that Costco's policy applied to both disabled and non-disabled persons, the Court held that Plaintiff failed to state a claim against Costco because "at most she alleges that Costco does not sell opioids to anyone.  This is not a cognizable claim for discrimination." Id. (citing cases).  The Court granted Costco's motion to dismiss.[3]

---

[2] WBA also moved to dismiss for lack of jurisdiction. WBA Motion to Dismiss for Lack of Jurisdiction (dkt. 35).  Because the Court granted WBA's motion to dismiss (dkt. 36), it did not reach WBA's jurisdictional argument.

[3] The Court dismissed the claims against Costco brought under the UCL and Unruh Act "because they turn on a finding of liability for Costco on the federal claims," and Plaintiff failed to adequately plead her federal claims.  Order at 14.

3

### 2. Walgreens

The Court held that Plaintiff failed to allege any facts supporting a theory of intentional discrimination by Walgreens. Id. at 15. Since she failed to state a claim for intentional discrimination, Plaintiff was left with two cognizable theories: (1) Walgreens' policy disparately impacted disabled persons by depriving them of meaningful access; or (2) Walgreens failed to provide reasonable and necessary accommodations. Id. The Court held that Plaintiff failed to state a claim under either theory.

#### a. Meaningful Access

Plaintiff alleged that Walgreens' policy failed to provide meaningful access in four separate ways, but the Court found that three of Plaintiff's theories either lacked "any factual support" or "cannot have an 'exclusionary effect' on Plaintiff and the putative class because they impact everyone who seeks to fill an opioid prescription equally, whether disabled or not." Id. at 17, fn. 11. The Court concluded that the "only cognizable policy alleged by Plaintiff that could possibly violate the 'meaningful access' standard is the alleged 'dose and duration' restriction policy imposed by Walgreens." Id. at 17.

The Court held that Plaintiff failed to state a plausible claim based on an alleged "dose and duration" policy. Id. at 17–18. While Plaintiff alleged that Walgreens refused to fill her prescription for various reasons, none of the reasons involved a "dose or duration" threshold. Id. While Walgreens' stated reasons for refusing to fill Plaintiff's prescription could have been pretextual, Plaintiff did not plead any facts supporting that theory. Id. Accordingly, the Court found that "while it is possible Plaintiff's prescription rejections were premised on a 'dose and duration' policy, that conclusion is implausible given the Walgreens' pharmacists' alleged behavior." Id. at 17 (original emphasis).

The Court further observed that Plaintiff "reports taking the same dose of Morphine since 2012" and has "routinely filled prescriptions from Walgreens in the past 8 years." Id. at 18. The Court noted that these "facts alone make a 'dose and duration' policy implausible; if there is a threshold above which Walgreens refuses to fill legitimate opioid prescriptions, it cannot be based on [Plaintiff's] accounts, as she has procured opioids at

4

Walgreens regularly over the last decade." Id.

### b. Reasonable Accommodation

The Court held that Plaintiff failed to state a claim based on a reasonable accommodation theory. Id. at 19–20. Specifically, Plaintiff failed to establish that (1) the alleged policies prevent disabled persons from having a "like experience" as similarly situated non-disabled persons and (2) "Defendants' alleged policies are unreasonable in any sense of the word." Id. The Court granted Walgreens' motion to dismiss.[4]

### C. SAC Allegations

The allegations in the SAC broadly mirror the allegations in the FAC. Compare SAC with FAC (dkt. 13). Plaintiff contends that following several lawsuits alleging that Defendants contributed to the opioid pandemic, Defendants implemented overly restrictive opioid prescription fulfillment policies and practices that discriminate against disabled persons.[5] See generally SAC ¶¶ 41–73.

While Plaintiff's general allegations are substantially the same, she has narrowed her specific theory of liability in the SAC. Her theory now centers on CDC Guidelines 5 and 6, which were issued in 2016 and provide in relevant part:

- Guideline 5 states that clinicians "should carefully reassess evidence of individual benefits and risks when considering increasing dosage to > 50 morphine milligram equivalents (MME)/day, and should avoid increasing dosage to > 90 MME/day or carefully justify a decision to titrate dosage to > 90 MME/day." Id. ¶ 43.
- Guideline 6 states that when opioids are used for acute pain, "[t]hree days or less will often be sufficient; more than seven days will rarely be needed." Id.

Plaintiff alleges that both Costco and Walgreens improperly used these guidelines

---

[4] Same as with Costco, the Court dismissed all claims against Walgreens because Plaintiff failed to adequately plead discrimination under federal law. Order at 21.
[5] Plaintiff also claims that (1) Defendants' alleged policies interfere with the physician-patient relationship and (2) Defendants did not consistently honor discounts offered with prescription drug programs. See, e.g., SAC ¶¶ 60–61. However, Plaintiff does not assert any claims based on either allegation.

United States District Court
Northern District of California

to create policies and practices that discriminate against patients with opioid prescriptions that exceed either the recommended dose (i.e. greater than 50 or 90 MME/day) or recommended duration (i.e. greater than 3 to 7 days) (together, "dose and duration thresholds").[6] SAC ¶¶ 54–73.

The policies that Plaintiff alleges Walgreens and Costco adopted are the same or substantially the same. For both, Plaintiff alleges that when a patient presents an opioid prescription that exceeds either the dose or duration threshold, Walgreens or Costco "through its Opioid Dispensing Policy, and related Practices, Procedures and Training, pressures and/or instructs, expressly or implicitly, its pharmacists to not fill such prescriptions and/or fill them at lesser amounts which do not exceed the CDC Guideline dose and duration thresholds." See SAC ¶ 56 (describing Walgreens' policy), ¶ 66 (describing Costco's policy verbatim).

Neither alleged policy necessarily prohibits Defendants from filling opioid prescriptions exceeding the dose and duration thresholds. Id. at ¶¶ 57, 67. Instead, each policy "actively discourages and burdens the process of filling of prescriptions exceeding the Guidelines dosage or duration thresholds, either at all or as written." Id.

Plaintiff alleges that the "active discouragement" manifests itself in various ways. With respect to Walgreens, Plaintiff alleges, for example, that a pharmacist at the Castro Valley Walgreens refused to fill her prescription because "her MMEs were too high per the Guideline." Id. ¶ 90. Instead, the pharmacist suggested Plaintiff "try a 24-hour Walgreens store or one near a hospital." Id. In other instances, Walgreens pharmacists have told Plaintiff "to return in a certain number of hours or days, but when she returns, they will tell her they can't fill her prescription." Id. ¶ 93. Other times, Plaintiff has been "required to pull out a calendar and physically count days to satisfy a pharmacist that it has been 30 days since her prescription had been filled and she was out of medication, only to be told

---

[6] The complaint is ambiguous with respect to when the dose and duration thresholds are triggered. It is not clear whether the dose threshold is triggered by prescriptions greater than 50 MME/day or 90 MME/day. Similarly, it is not clear whether the duration threshold is triggered by prescriptions over 3 days or over 7 days.

6

the computer would not let the pharmacist release the medication." Id. ¶ 94. In each case, Plaintiff alleges that the pharmacist was acting pursuant to the alleged policy to discourage her from filling her opioid prescription.

With respect to Costco, Plaintiff alleges three specific instances where she has attempted to fill a prescription at a Costco pharmacy, but the pharmacist has refused to do so. Id. ¶¶ 109–111. For example, Plaintiff alleges that she tried to fill her prescription at a Costco pharmacy, but "the pharmacist would not entertain filling it, giving it back to her without explanation." Id. ¶ 109. On another occasion, a Costco pharmacist declined to fill Plaintiff's prescription, telling her that "a Costco card was necessary to fill her type of prescription" and that she could not fill Plaintiff's prescription because Plaintiff did not have her Costco card with her. Id. ¶ 110.

Plaintiff alleges that Defendants' policies have harmed her by subjecting her to unnecessary travel and expenses, stress, and anguish stemming from the uncertainty and difficulties that she faces when filling her legitimate opioid prescription. Id. ¶¶ 105–107, 113. She further contends that the alleged policies disproportionately apply to persons who are disabled under federal law. See, e.g., id. ¶126. In this regard, Plaintiff alleges that "disabled persons are more likely to require opioid prescriptions which exceed [the dose and duration thresholds] than non-disabled persons." Id.

Based on her allegations, Plaintiff asserts claims under Title III of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, Section 1557 of the Affordable Care Act ("ACA"), and California's Unruh Civil Rights Act (the "Unruh Act"). She brings her claims on behalf of a putative class consisting of:

> "All persons residing in the United States suffering from a disabling medical condition for which they were and are issued valid prescriptions for opioid medication by a licensed medical provider as part of medical treatment during the period of March 15, 2016 to the present to treat (i) high impact chronic pain, defined as pain lasting 3 or more months, from any cause and accompanied by at least one major activity restriction, (ii) pain associated with a cancer diagnosis or treatment or (iii) pain associated with palliative or nursing home care and were unable to have, or experienced difficulty in having, such prescriptions filled as written, at any pharmacy

owned, controlled and/or operated by the Defendants in the United States."[7]

Both Walgreens and Costco have moved to dismiss the SAC for failure to state a claim. See Walgreens MTD SAC: Costco MTD SAC. Walgreens also moves to dismiss for lack of jurisdiction. See Walgreens Motion to Dismiss for Lack of Jurisdiction (dkt. 75).

## II.   LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) applies when a complaint lacks either "a cognizable legal theory" or "sufficient facts alleged" under such a theory. Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. This is not a "probability requirement," but it requires more than a "sheer possibility" that the defendant is liable: "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

Courts should allow a plaintiff leave to amend unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246–47 (9th Cir. 1990). To determine whether amendment would be futile, courts examine whether the complaint can be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

---

[7] Plaintiff also brings claims on behalf of an identically defined California subclass. SAC ¶ 25.

8

## III. DISCUSSION

The SAC fails to state a claim for two independent reasons. First, the SAC fails to plausibly allege that either Defendant maintained the alleged dose and duration policy. Second, all of Plaintiff's claims rest on the same premise—that Defendants' policies either exclusively or disproportionately discriminate against disabled persons.[8] But Plaintiff has not adequately alleged that the policies treat disabled persons any differently than similarly situated non-disabled persons. She thus fails to state claims for disability discrimination.

### A.     The Alleged Policies

Plaintiff has failed to plausibly allege that either Defendant maintains a policy that "pressures and/or instructs, expressly or implicitly, its pharmacists to not fill such prescriptions and/or fill them at lesser amounts which do not exceed the CDC Guideline dose and duration thresholds." See SAC ¶¶ 56, 66.

Plaintiff contends that the policies "must be accepted as true" at the motion to dismiss stage. Pl. Opp. to Walgreens MTD (dkt. 78) at 6; Pl. Opp. to Costco MTD (dkt. 79) at 9. But that is not the law. Plaintiff's factual allegations about the burdens she allegedly faced filling prescriptions at Defendants' pharmacies are taken as true, but there are multiple possible explanations for those burdens. One possible explanation is that Defendants maintained the alleged policies, but other possible explanations include that Defendants were completing due diligence before dispensing a controlled substance, that they did not have the drugs needed to fill Plaintiff's prescription, or that they could not fill the prescription without a membership card.

To render her explanation plausible, Plaintiff "cannot offer allegations that are 'merely consistent with' [her] favored explanation." In re Century Aluminum Co. Sec. Litig., 729 F.3d 1104, 1108 (9th Cir. 2013); Iqbal, 556 U.S. at 678. Instead, "[s]omething

---

[8] Plaintiff alleges three federal claims: violation of the ADA, Rehabilitation Act, and ACA. The same analysis applies for each of these claims. See Doe v. CVS Pharm., Inc., 982 F.3d 1204, 1209 (9th Cir. 2020); Zukle v. Regents of Univ. of California, 166 F.3d 1041, 1045, n. 11 (9th Cir. 1999). Plaintiff's one state law claim alleged under the Unruh Act follows the analysis for ADA claims, but also requires allegations of "willful, affirmative misconduct on the part of those who violate the Act." Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc., 742 F.3d 414, 425 (9th Cir. 2014). In short, Plaintiff's claims rise and fall together.

more is needed, such as facts tending to exclude the possibility that [an] alternative explanation is true." In re Century Aluminum, 729 F.3d at 1108 (citing Twombly, 550 U.S. at 554); In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (declining to assume the truth of "allegations that are merely conclusory, unwarranted deductions of facts, or unreasonable inferences").

Here, Plaintiff has not plausibly pled that the alleged policies were the reason for the mistreatment she allegedly experienced at Defendants' pharmacies. To start, Plaintiff does not allege that the policies prohibit Defendants from filling prescriptions for opioid medications. Rather, Plaintiff alleges that the policies "pressure or instruct" pharmacists to "actively discourage[] and burden[] the process of filling of prescriptions exceeding the Guideline dosage or duration thresholds." See SAC ¶¶ 57, 67. Yet Plaintiff provides no specifics as to how the alleged policies "pressure or instruct" pharmacists in practice. Nor has Plaintiff herself viewed either of the alleged polices or obtained any specific details about the contents of the alleged policies. See id. ¶¶ 54–55, 65–66. Indeed, the SAC is ambiguous with respect to the trigger for the dose and duration thresholds—it does not make clear whether the dose threshold is triggered by 50 or 90 MME/day or whether the duration threshold is triggered by 3 or 7 days.[9] Given the absence of specifics, including what specifically triggers the policies' application and how they are applied, it is difficult to infer that a given pharmacist's alleged behavior is the result of the policy, as opposed to situational factors that are unique to a particular customer interaction.

Additionally, it is odd to think that Defendants would carry opioid pills in excess of the dose and duration thresholds, but then "actively discourage"—but not outright prohibit—pharmacists from filling such prescriptions. If, as Plaintiff alleges, Defendants were motivated by a desire to avoid liability, it would seem to make more sense to ban such prescriptions outright. This seems especially true given that documents relied on in

---

[9] In one part, Plaintiff's Opp. to Walgreens MTD suggests that only prescriptions exceeding 7 days or 90 MME per day trigger the policy (dkt. 78 at 8), but in other places the same brief is ambiguous with respect to the dose and durations that trigger the policy (e.g. id. at 6).

10

the SAC state that in 2018, the average opioid prescription was for over 18 days.  See SAC ¶ 129, fn. 21 (citing Centers for Disease Control and Prevention, Annual Surveillance Report of Drug-Related Risks and Outcomes—United States, (2019)).  In other words, Defendants' pharmacists are being asked to come up with undefined ways to "actively discourage" the average opioid prescription holder from filling their prescription.  This seems unlikely at best.

The alleged policies become even less plausible when considered in the context of Plaintiff's allegations against each Defendant.  As to Costco, Plaintiff alleges only three specific instances of alleged discrimination: Costco denied her prescription "without explanation," told her that "Costco did not sell her medication," and declined to fill her prescription because she did not have her membership card.[10]  SAC ¶¶ 109–110.  In each instance, Plaintiff either does not provide sufficient detail to conclude the alleged policy was the reason for the denial (e.g. "the pharmacist would not entertain filling it, giving it back to her without explanation" (SAC ¶ 109)) or Costco's stated reasons seem more plausible than the alleged policy (e.g. "Costco did not sell her medication" (id.)).  Indeed, none of the interactions with Costco pharmacists involve a pharmacist referring to a dose or duration policy in any way.  The insufficiency of the allegations is particularly striking considering that Plaintiff is asking the Court to infer—on the basis of only three interactions—that Costco maintains a nationwide policy to discourage pharmacists from filling prescriptions that exceed the dose and duration thresholds.  The SAC fails to support that inference.

With respect to Walgreens, the Court previously observed that Plaintiff "has procured opioids at Walgreens regularly over the last decade." Order at 18.  While Plaintiff's allegations regarding the burdens and challenges of filling her prescription at Walgreens are more detailed compared to her allegations against Costco, it nonetheless

---

[10] Plaintiff appears to allege a fourth instance involving Costco, but in a single sentence, she claims only that she "tried to fill her prescription at the Costco in Concord because it is near her doctor's office, but was unsuccessful." SAC ¶ 111.

11

seems implausible that Walgreens pharmacists have followed a policy to actively discourage Plaintiff from filling her prescription, yet they have also regularly filled her prescription for almost a decade.

And as with Costco, the interactions that Plaintiff had with Walgreens pharmacists do not support an inference that Walgreens maintained the alleged policy. For example, Plaintiff alleges that, on unspecified occasions, Walgreens was not able to fill her prescription because the pharmacy was out of stock (SAC ¶ 92), it was too early to refill her prescription (id. ¶ 94), and additional medical records were required (id. ¶ 97)). With one exception,[11] the interactions with the Walgreens pharmacists also do not involve references to any dose or duration policy. Indeed, many of the pharmacists' behaviors—which Plaintiff alleges were designed to discourage her from filling her prescriptions—appear to be consistent with the behaviors that a pharmacist would be expected to take before dispensing a controlled substance, namely: checking prescription records, requesting additional information where questions arise, and declining to fill a prescription where questions remain.[12] In short, the behaviors more plausibly suggest due diligence than active discouragement.

The Court thus concludes that Plaintiff has not alleged sufficient facts to support the inference that either Defendant maintained the alleged policies.[13] *Cf.* Twombly, 550 U.S. at 556 ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). Dismissal is

---

[11] Plaintiff alleges one instance where a Walgreens pharmacist refused to fill her prescription, "referring to the new CDC Guideline and telling her that her MMEs were too high per the Guideline," but the pharmacist then suggested that she fill the prescription at other nearby Walgreens stores, which does not suggest a nationwide—or even a state-wide—policy. SAC ¶ 90
[12] While Plaintiff claims that the reasons Walgreens' pharmacists gave for delaying filling her prescriptions were "pretextual," she provides no specific facts to support this theory.
[13] Plaintiff's reliance on Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) and Sheppard v. David Evans and Assoc, 694 F.3d 1045 is misplaced. Pl. Opp. to Walgreens MTD at 5; Pl. Opp. to Costco MTD at 8. Both cases concern the pleading standard for employment discrimination claims, and neither alters the requirement that a complaint set forth a plausible claim showing the plaintiff is entitled to relief. See e.g. Sheppard 694 F.3d at 1048-49.

warranted for this reason alone.

### B. Discriminatory Effect

Even assuming that Plaintiff adequately alleged that Defendants maintained the dose and duration policies, Plaintiff's claims still fail because she has not adequately alleged that the policies treat disabled persons any differently than non-disabled persons. She thus fails to state claims for disability discrimination.

#### 1. Scope of the Policies

Plaintiff fails to show that the alleged policies exclusively or disproportionately apply to disabled persons. In this regard, Plaintiff alleges that patients with prescriptions exceeding the dose and duration thresholds "are prescribed such medication because they suffer from conditions which render them disabled within the meaning of the ADA." See, e.g., SAC ¶ 118; Pl. Opp. to Walgreens MTD at 7; Pl. Opp. to Costco MTD at 11. Plaintiff claims that such patients "tend to be either High Impact chronic pain patients, defined as having pain that lasts 3 months or longer accompanied by at least one major activity restriction, cancer patients, or patients receiving palliative care." SAC ¶ 118.

These are conclusory allegations. Plaintiff fails to allege sufficient facts to support the assertion that all or most persons with prescriptions exceeding the dose and duration thresholds are disabled under federal law. The fundamental flaw here is the absence of specifics: Plaintiff provides no specific reasons why it is plausible that persons with prescriptions exceeding the dose and duration thresholds are necessarily disabled. To the contrary, according to the CDC report that the SAC cites and relies on, 108,665,889 opioid prescriptions in 2018 were for seven or more days, making up 65 percent of total prescriptions. SAC ¶ 129, fn. 21 (citing Centers for Disease Control and Prevention, Annual Surveillance Report of Drug-Related Risks and Outcomes—United States, Table 1B (2019)). Indeed, the CDC reported that the average duration for an opioid prescription in 2018 was over 18 days. Id. No well-pled facts render plausible the conclusion that the majority of patients who receive opioid prescriptions exceeding the duration threshold are disabled.

13

Further, the Court previously rejected the argument that persons with chronic or acute pain are necessarily disabled under federal law. Order at 9–13 (holding that "chronic pain, alone, is not enough to create a disability" and "[n]ot all acute pain patients are 'disabled' under federal law"). Plaintiff's new theory, however, appears to effectively repackage these previously rejected theories by again using an unsupported data point as a proxy for disability. Plaintiff contends that all patients with prescriptions exceeding 50 MME/day or 90 MME/day and that all patients with prescriptions exceeding 3 or 7 days are "exclusively" or "tend to be" disabled. But again, Plaintiff fails to allege any facts to support the link between high dosage or multi-day prescriptions and disability.

Instead, Plaintiff argues that it is reasonable for the Court to infer at this stage of the litigation that "all persons with such prescriptions are disabled under the ADA." Pl. Opp. to Walgreens MTD at 8; Pl. Opp. to Costco MTD at 10–11. Plaintiff cites statutes and case law to argue that because "'disability' under the ADA is an extremely broad and easy to meet classification," it is plausible that "persons who have conditions that require opioid prescriptions lasting more than 7 days and/or exceeding 90MME are reasonably likely to be classified as disabled under the ADA." See, e.g., Pl. Opp. to Walgreens MTD at 8. But this argument begs the very question: Plaintiff makes no specific factual allegations to support the contention that persons with prescriptions exceeding the dose and duration thresholds are disabled under the ADA. Instead, Plaintiff makes only the conclusory assertion that "[a] reasonable inference drawn from the SAC is that people who are given such opioid prescriptions have an underlying condition or conditions that qualifies them as disabled under the ADA." Pl. Opp. to Costco MTD at 11. But without more, this is not a reasonable inference—it is a bridge too far.

Plaintiff also argues that whether the alleged policies apply exclusively or overwhelmingly to disabled persons is "an argument over what the evidence ultimately might or might not prove out." See Pl. Opp. to Costco MTD at 11–12; Pl. Opp. to Walgreens MTD at 8–9. This puts the cart before the horse. At the motion to dismiss stage, Plaintiff must plausibly plead facts sufficient to support a claim for relief, and based

14

on the SAC's allegations, Plaintiff has failed to plausibly allege that Defendants' alleged policies exclusively or disproportionately affect disabled persons. Accordingly, the policies will be treated as applying to both disabled and non-disabled persons alike.

### 2. Policy Effect

Plaintiff offers three separate theories as to why Defendants' policies discriminate against disabled persons: (1) the polices intentionally discriminate against disabled persons; (2) the policies "systematically exclude" disabled persons; and (3) Defendants fail to provide meaningful accommodations. These three theories all fail for the same primary reason: Plaintiff fails to establish that the alleged policies treat disabled persons any differently than similarly situated non-disabled persons.

#### a. Intentional Discrimination

Plaintiff alleges no facts supporting a theory of intentional discrimination or deliberate indifference by either Defendant. See Young v. Facebook, Inc., 790 F. Supp. 2d 1110, 1116 (N.D. Cal. 2011). Plaintiff's allegations consist of no more than "threadbare recitals of the elements." Bain v. Cal. Teachers Ass'n, 891 F.3d 1206, 1211 (9th Cir. 2018); see, e.g., SAC ¶ 106 ("Walgreens has acted intentionally and with deliberate indifference to the strong likelihood that a violation of federally protected rights would result from the implementation of their foregoing policies, practices and procedures"); ¶ 113 ("Costco acted intentionally and with deliberate indifference to the strong likelihood that a violation of federally protected rights would result from the implementation of their foregoing policies, practices and procedures").

Plaintiff also alleges that Defendants' policies intentionally discriminate against disabled persons because they draw a distinction based on a characteristic—i.e. a high dose or duration prescription—more likely to be applicable to a disabled person. SAC ¶ 126. This argument fails because Plaintiff has not adequately pled the necessary link between disability and persons subject to the alleged policies. Plaintiff has not shown that prescriptions exceeding the dose and duration thresholds are "almost exclusively indicators of membership in the disfavored group." Pac. Shores Props., LLC v. City of Newport

Beach, 730 F.3d 1142, 1160, n. 23 (9th Cir. 2013). Therefore, Plaintiff's "proxy discrimination" theory also fails.[14]

### b.    Meaningful Access

Plaintiff alleges that Defendants' policies deprive her and the putative class of meaningful access to Walgreens and Costco pharmacies. SAC ¶ 126. Plaintiff claims that she and the putative class "are unable to get their valid prescriptions filled in the same manner as are people with opioid prescriptions that do not exceed the dose and/or duration limits of the CDC Guidelines and people with non-opioid prescriptions." Id. ¶ 130.

Plaintiff fails to state a claim based on lack of meaningful access. A claim based on lack of meaningful access requires showing that disabled persons are "systematically exclude[d]" from the services at issue. See Doe v. CVS Pharmacy, Inc., 982 F.3d 1204, 1210 (9th Cir. 2020) (citing Alexander v. Choate, 469 U.S. 287, 302 (1985)); see also K.M. ex rel. Bright v. Tustin Unified Sch. Dist., 725 F.3d 1088, 1102 (9th Cir. 2013). The policies alleged here cannot have an "exclusionary effect" on Plaintiff and the putative class because they apply to everyone with a prescription exceeding the dose and duration thresholds, whether disabled or not. See Choate, 469 U.S. 287 at 302.

### c.    Reasonable Accommodation

Plaintiff alleges Defendants must make reasonable accommodations because Plaintiff and the putative class "do not have similar or 'like' experience as non-disabled persons presenting prescriptions for non-opioid medication or opioid medication which does not exceed the dosage and/or duration thresholds in the CDC Guideline." SAC ¶ 132.

To state a claim for failure to provide reasonable accommodation, a plaintiff must show that a requested modification is (1) reasonable and (2) necessary. See PGA Tour v. Martin, 532 U.S. 661, 683 n. 38 (2001). Whether an accommodation is "reasonable" is a

---

[14] Plaintiff's over-discrimination theory, raised for the first time in Plaintiff's opposition motions, fails as well. Pl. Opp. to Costco MTD at 2–3; Pl. Opp. to Walgreens MTD at 2–3. Over-discrimination involves a defendant who enacts a facially neutral policy "knowing (but accepting) that some individuals who are not members of the disfavored group will suffer alongside the targeted individuals." Pac. Shores Props., LLC, 730 F.3d at 1160, n. 23. None of Plaintiff's allegations suggest that either Defendant was motivated by such animus.

16

"fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it." Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1083 (9th Cir. 2004) (internal citation and quotation omitted).  An accommodation is necessary where failure to provide it would deprive a disabled person from having a "like experience" as a non-disabled person.  Baughman v. Walt Disney World Co., 685 F.3d 1131, 1135 (9th Cir. 2012).

Plaintiff fails to show that Defendants' policies deprive disabled persons from having a "like experience" as non-disabled persons.  To the contrary, all persons with prescriptions exceeding the dose and duration thresholds are subject to the same treatment, whether disabled or not.  Plaintiff also fails to allege that the requested modifications are reasonable.  Plaintiff seeks a modification so that "valid opioid prescriptions for legitimate medical treatment exceeding the dosage and/or duration thresholds in the CDC Guideline will be filled as written."  SAC ¶ 134.  This proposed accommodation is so vague as to be effectively unworkable, and it suffers from other deficiencies as well.  For example, it fails to take into account pharmacists' duties to exercise professional judgment when filling prescriptions for controlled substances, and the liability that they may incur by failing to do so.  See e.g. Baughman, 685 F. 3d at 1135.  Plaintiff thus fails to state a claim under a reasonable accommodation theory.

## IV.     CONCLUSION

For the foregoing reasons, the Court grants Defendants' motions to dismiss. Because it is not a certainty that Plaintiff cannot allege facts sufficient to support her claims, the Court grants Plaintiff leave to amend her complaint.  If she chooses to do so, Plaintiff must file her amended complaint within **30 days** of this Order.

1 **IT IS SO ORDERED.**

2 Dated: August 30, 2021



3 CHARLES R. BREYER
United States District Judge