IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN SMITH,<br><br>        Plaintiff,<br><br>    v.<br><br>WALGREENS BOOTS ALLIANCE, INC., et al.,<br><br>        Defendants. | Case No. 20-cv-05451-CRB<br><br>**ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE** |

    Plaintiff brings a nationwide class action lawsuit against Walgreens, alleging that Walgreens maintains a policy relating to prescription opioid dispensing that discriminates against disabled people. The Court has twice granted Walgreens' motions to dismiss, and Walgreens now moves to dismiss Plaintiff's Third Amended Complaint ("TAC"). Motion to Dismiss (dkt. 103) (MTD). The TAC's allegations generally mirror the allegations in the Second Amended Complaint ("SAC"), and the TAC suffers from similar deficiencies as the SAC. For the reasons discussed below, the Court grants the motion to dismiss the TAC with prejudice.

## I.   BACKGROUND

    In 2016, the Center for Disease Control ("CDC") published guidelines to provide "better clinician guidance on opioid prescribing." See TAC ¶ 50. The CDC guidelines recommend that clinicians "prescribe the lowest effective dosage" of opioids and "carefully justify" decisions to prescribe opioid dosages that exceed 90 morphine milligram equivalents ("MMEs"). Id. In addition, the CDC guidelines recommend that

when "opioids are used for acute pain," a clinician "should prescribe no greater quantity than needed for the expected duration of pain severe enough to require opioids." Id. More specifically, the guidelines state that when opioids are prescribed for acute pain: "Three days or less will often be sufficient; more than seven days will rarely be needed." Id.

Plaintiff alleges that in the 2010s, various pharmacies, including Walgreens, faced lawsuits alleging that they "had inadequate policies and procedures in place to ensure that prescriptions they filled were valid prescriptions for legitimate medical purposes." TAC ¶ 48. Plaintiff alleges that in response to the lawsuits, Walgreens improperly used the CDC guidelines to create a policy that discriminates against disabled people. See id. ¶¶ 48–50. In particular, Walgreens allegedly implemented a policy to discourage its pharmacists from filling opioid prescriptions that exceed 90 MMEs and 7 days (the "dose and duration threshold"). Id. ¶ 63. Plaintiff alleges that Walgreens' policy "incentivizes, pressures and/or instructs, expressly or implicitly, its pharmacists to not fill such prescriptions and/or fill them at lesser amounts which do not exceed the CDC Guideline dose and duration thresholds, treating those thresholds as hard and fast limits." Id.

The alleged policy does not prevent Walgreens pharmacists from filling opioid prescriptions that exceed the dose and duration threshold. TAC ¶ 64 ("[T]he Policy does not mean that prescriptions exceeding the CDC Guideline dosage and duration thresholds will never be filled."). Instead, the alleged policy "actively discourages and burdens the process of filling valid prescriptions exceeding the Guideline dosage and duration thresholds." Id. Plaintiff alleges that "Walgreens' pharmacists are made aware through their managers and their training that by filling such prescriptions, the pharmacists are susceptible to being fired and risk being left on their own in any civil or criminal investigation relating to the filling of the prescription." Id. To avoid "being fired" and "being left on their own in any civil or criminal investigation," Walgreens pharmacists allegedly "take steps to avoid having to fill the prescription by imposing obstacles that others whose prescriptions are not for opioids exceeding the CDC Guideline dose and duration thresholds do not face." Id. ¶ 114.

2

     Plaintiff alleges that the dose and duration policy discriminates on the basis of disability because "research has suggested a link between opioid prescriptions and disability program participation." See TAC ¶ 136; see also id. ¶¶ 135–139. Plaintiff alleges that "persons receiving prescriptions which exceed the higher end of the dosage (90 MME) and duration (7 days) thresholds are highly likely to be disabled within the meaning of the ADA." Id. ¶ 139.

## II.  LEGAL STANDARD

     Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is warranted where a complaint lacks "a cognizable legal theory" or "sufficient facts alleged" under such a theory. Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019). Whether a complaint contains sufficient factual allegations depends on whether it pleads enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. This is not a "probability requirement," but it requires more than a "sheer possibility" that the defendant is liable: "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

## III.  DISCUSSION

     Plaintiff asserts that (1) Walgreens' policy facially discriminates against disabled people; (2) Walgreens' policy disparately impacts disabled people; and (3) Walgreens fails to provide meaningful accommodations.[1] See Opp. (dkt. 104) at 12. None of these claims

---

[1] Plaintiff alleges three federal claims: violation of the ADA, Rehabilitation Act, and ACA. The same analysis applies for each of these claims. See Doe v. CVS Pharm., Inc., 982 F.3d 1204, 1209 (9th Cir. 2020); Zukle v. Regents of Univ. of California, 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999). Plaintiff's one state law claim under the Unruh act follows the same analysis, but also requires allegations of "willful, affirmative misconduct on the part of those who violate the Act." Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc., 742 F.3d 414, 425 (9th Cir.

are plausibly alleged.

### A.     Facial Discrimination

Plaintiff does not plausibly allege that Walgreens' policy facially discriminates against disabled people.  Facial discrimination occurs when a policy applies to people based on disability.  See Dare v. California, 191 F.3d 1167, 1169–71 (A regulation imposing a "$6 biennial fee for disability parking placards" was facially discriminatory because "surcharges against disabled people constitute facial discrimination."); see also Ellis v. Hager, No. C 07-00665 SBA (PR), 2009 WL 347138, at *2 (N.D. Cal. Feb. 6, 2009).

The alleged policy is not facially discriminatory.  Plaintiff alleges that the trigger for the alleged policy is opioid prescriptions that exceed the dose and duration threshold.  She does not allege that the trigger for the policy is any form of disability, as would be required to state a claim for facial discrimination.  Instead, she alleges that the policy applies to any customer—disabled or not—who goes to Walgreens to fill an opioid prescription that exceeds the dose and duration threshold.

To the extent that Plaintiff alleges proxy discrimination, that claim also fails.  To state a claim for proxy discrimination, Plaintiff must plausibly allege that the policy "treats individuals differently on the basis of seemingly neutral criteria that are so closely associated with the disfavored group that discrimination on the basis of such criteria is, constructively, facial discrimination against the disfavored group."  Davis v. Guam, 932 F.3d 822, 837 (9th Cir. 2019) (quoting Pac. Shores Props., LLC v. City of Newport Beach, 730 F.3d 1142, 1160 n. 23 (9th Cir. 2013)).

Plaintiff has not plausibly alleged that the policy is "so closely associated" with disabled people that it amounts to proxy discrimination.  Plaintiff cites a handful of studies that purport to show a link between disability status and opioid prescriptions.  See, e.g., TAC ¶ 136 ("A March 2021 study by the University of Michigan notes that preliminary

---

2014).  In short, Plaintiff's claims rise and fall together.

research has suggested a link between opioid prescriptions and disability program participation."). But the studies provide no meaningful detail on the strength of the link between disability and opioid prescriptions that exceed the dose and duration threshold. See id. ¶¶ 135–139. There are no details on the number of disabled versus non-disabled people who receive opioid prescriptions, and there are no details on the correlation between the dose and duration threshold and disability.[2] See id. Plaintiff broadly alleges that persons who receive prescriptions that exceed the dose and duration threshold are overwhelmingly disabled. See id. ¶¶ 130–134 ("Opioid prescriptions exceeding these or similar dose and duration thresholds are given to treat severe pain resulting from disabling medical conditions."). But these are bald assertions, not well-pleaded factual allegations. While there is a "sheer possibility" that most or all people with opioid prescriptions exceeding the dose and duration threshold are disabled, Plaintiff—despite multiple opportunities to amend—has not pleaded enough "factual content" to make this allegation plausible. See Ashcroft, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

### B.    Disparate Impact

Plaintiff does not plausibly allege a claim based on disparate impact. A facially neutral policy may support a "disparate impact claim based on lack of meaningful access" where the "services, programs, and activities remain open and easily accessible to others." Doe v. CVS Pharmacy, Inc., 982 F.3d 1204, 1211 (9th Cir. 2020) (citing Crowder v. Kitagawa, 81 F.3d 1480, 1484 (9th Cir. 1996)); see also Payan v. Los Angeles Community College District, 11 F.4th 729, 738 (9th Cir. 2021).

Here, the service at issue is the ability to fill opioid prescriptions exceeding the dose and duration threshold, and the alleged policy that affects access to that service applies to all customers. Any customer seeking to fill an opioid prescription that exceeds the dose and duration threshold might encounter challenges filling their prescription, regardless of their disability status. Plaintiff does not plausibly allege that the policy imposes any

---

[2] Notably, while the complaint alleges that Plaintiff's prescription exceeds 7 days, it does not allege that the prescription exceeds 90 MME.

5

unique burdens on disabled people.

Plaintiff cites Crowder v. Kitagawa to argue that a policy that affects both disabled and non-disabled people may still support a disparate impact claim. Opp. at 13–14 (citing 81 F.3d 1480 (9th Cir. 1996)). But Crowder shows why the claim here fails. In Crowder, Hawai'i implemented a regulation that imposed a 120-day quarantine on carnivorous animals entering the state. Id. at 1481. In that case, the plaintiff alleged that the regulation disparately impacted visually impaired people who use guide dogs. Id. The 120-day quarantine period would not prevent non-visually impaired people from entering Hawai'i (i.e., the state remained "open and easily accessible" to them), but the same was not true for people who used guide dogs to navigate. See id. In contrast to the allegations in Crowder, Walgreens' alleged policy applies the same to everyone who seeks to fill a prescription exceeding the dose and duration thresholds. Any customer seeking to fill a prescription exceeding the dose and duration threshold may encounter obstacles when they try to do so. No unique burden is placed on disabled people—they do not lack meaningful access to a service that remains open and easily accessible to others.[3]

### C. Reasonable Modification

Plaintiff's reasonable modification claim fails for similar reasons. A reasonable modification claim requires a plaintiff to adequately allege that the requested modification is (1) reasonable and (2) necessary to accommodate the plaintiff's disability. See Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1082 (9th Cir. 2004). An accommodation is necessary where failure to provide it would deprive a disabled person from having a "like experience" as a non-disabled person. Baughman v. Walt Disney World Co., 685 F.3d 1131, 1135 (9th Cir. 2012).

Here, every customer seeking to fill an opioid prescription exceeding the dose and direction threshold may encounter the friction of a pharmacist who is "expected to either

---

[3] Plaintiff also relies on Doe v. CVS Pharmacy, Inc., 982 F.3d 1204 (9th Cir. 2020), to contend that "[t]he fact that a policy might apply to non-disabled persons as well as disabled persons does not insulate it from a disparate impact claim." See Opp. at 13. Doe involved a highly unique set of facts that bears no resemblance to the facts alleged here.

6

1 refuse to fill the prescription, only partially fill the prescription, or impose some other requirement not imposed on other customers." TAC ¶ 11. As a result, both disabled and non-disabled people have a "like experience" under the alleged policy, and Plaintiff's reasonable modification claim fails.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Walgreens' motion to dismiss. Because this is Plaintiff's third amended complaint, the motion to dismiss is granted with prejudice. The Court denies Plaintiff's motion to strike (dkt. 105) as moot because it does not rely on the Good Faith Dispensing Policies. The Court denies the parties' motions for sanctions (dkts. 106, 109) because neither party has established any sanctionable conduct. The Court denies Walgreens' motion to dismiss for lack of personal jurisdiction (dkt. 102) as moot.

**IT IS SO ORDERED.**

Dated: September 9, 2022

CHARLES R. BREYER
United States District Judge